## WHEATON *against* WHEATON.

Parol evidence is inadmissible to shew a mistake in law as a ground for reforming a written instrument founded on such mistake.

Therefore, where it was stated, in a bill chancery, brought by *A.* against *B.,* his father, that it was agreed between the parties, that *A.* should purchase of *B.* a farm of the value of 4000 dollars, for which *A.* should give *B.* two promissory notes, one for 2000 dollars, payable on demand, with six *per cent*

interest, the other for the same amount, with five *per cent* interest, payable at the decease of *B*., and then to be delivered up unpaid, to *A*., as his portion of *B's* estate ; that the parties thereupon applied to a justice of the peace to draw the necessary writings to carry such agreement into effect, but by accident, and through their own want of knowledge, they failed to give him the information requisite for this purpose, and he drew the last mentioned note payable in three years, and omitted the stipulation that it should be delivered up at the death of *B*. unpaid, which note was signed by *A*., he being ignorant of the operation of law thereon ; that *B*. had brought an action on such note, and was endeavouring to enforce the collection of it ; praying for an injunction and other relief ; it was held, 1. that the mistake alleged was not a mistake in any matter of fact, but in a mere matter of law ; 2. that parol evidence was inadmissible to prove the agreement set forth, and consequently, that the bill must be dismissed.

*Windham,* July, 1831.

Wheaton *v.* Wheaton.

THIS was a bill in chancery, stating the following case. *Levi Wheaton*, the plaintiff, is the son of *James Wheaton*, the defendant.    In *November*, 1826, the defendant, being about eighty years of age, with a view to a final arrangement of his property, amounting in value to 10,000 dollars, proposed to the plaintiff to become the purchaser of a farm of the value of 4000 dollars, for which the plaintiff should execute to the defendant two notes of hand, one for the sum of 2000 dollars, payable on demand, with six *per cent.* interest, the other for the like sum of 2000 dollars, bearing interest at five *per cent.*, and payable at the decease of the defendant, when such last-mentioned note should be delivered up, unpaid, to the plaintiff, and said sum of 2000 dollars should be reckoned to him as his portion in the defendant's estate.    An agreement to this effect was, therefore, entered into between the parties ; and they applied to *Jonathan Nichols* Esq., a justice of the peace in their vicinity, to draw the necessary writings to carry this agreement into effect ; but by accident, and through their own want of knowledge, they failed to give him such information as would enable him to draw up proper and suitable writings to carry the agreement into effect ; and in consequence of his misapprehension of the agreement, through such mistake and accident, the last-mentioned note was made payable in three years from the 1st of *April* 1827, and the stipulation that it should be delivered up, at the death of the defendant, was wholly omitted.    The plaintiff being ignorant of the operation of law upon such a note, was induced to sign it.    The bill, after stating sundry proceedings of the defendant, in relation to the farm so conveyed, not material to any question in the present case, then alleges, that he the defendant has commenced an action on the

note, and is endeavouring to enforce the collection of it, in violation of the agreement so made between the parties. The prayer of the bill is, that the defendant may be enjoined against proceeding in said action ; and that the appropriate relief may be granted, in conformity to the original agreement.

On the hearing in the superior court, (*Daggett*, J. sitting,) the plaintiff offered parol evidence to prove the facts set forth in his bill ; to the admission of which the defendant objected ; and the court rejected it, and dismissed the bill. The defendant thereupon moved for a new trial, on the ground of error in that decision.

*H. Strong* and *Judson*, in support of the motion, contended, 1. That the mistake disclosed in the bill, was a mistake *in fact*. The plaintiff *made* one agreement, and through mistake, *signed* another. The particular circumstances, which led to the mistake, are immaterial ; and it is equally immaterial whether the mistake was made by the scrivener or the party. It is sufficient, that the contract signed, is not what the parties intended and agreed that it should be. Such being the nature of the mistake, it may, undoubtedly, be proved, by parol evidence.

2. That if the mistake was merely a mistake *in law*, it is a good ground of relief in chancery, and may be proved by parol evidence. *Lansdown* v. *Lansdown, Mosely's Rep.* 364. *Hunt* v. *Rousmanier's* administrators, 8 *Wheat.* 175. 210. & seq. *Smith* v. *Chapman* & al. 4 *Conn. Rep.* 344. In the case last cited, the mistake was a sheer mistake in law. Both parties, surely, knew the matter of fact, that one of the subscribing witnesses was *Dolly Chapman*, and that she was the wife of the mortgagor ; but they mistook the law in supposing that she was a competent witness, and that the deed was legally witnessed. The court, however, reformed the deed.

*Goddard* and *Welch*, contra, insisted, That the plaintiff had shown no mistake, which called for the interposition of a court of chancery to prevent the collection of a note in suit. By giving and receiving such a note, the parties have constituted it the authentic memorial of their agreement ; and neither party can now be permitted to shew, by any inferior evidence, that they made a different agreement. 3 *Stark. Ev.* 999. 1002. The bill shews no mistake as to the terms or execution of the note. The plaintiff knew what it was, when he

signed it ; and if he acted under any misapprehension, it related solely to its *legal operation ; i. e.* he supposed a note payable in three years, was a note payable at the death of the promisee, and then not to be paid, but to be given up unpaid. Has a court of chancery ever received parol evidence to reform a written contract in this manner ?

*Windham,*
July, 1831.

Wheaton
*v.*
Wheaton.

BISSELL, J. It is, unquestionably, the province of a court of chancery to relieve against fraud, accident and mistake ;— and in such cases, parol evidence is admitted, to show that the party is entitled to the relief sought. In this case, there is no pretence of *fraud.* The bill proceeds wholly on the ground of a *mistake ;* and the only question is, whether *such* a mistake is here alleged, as falls within the general principles, and calls for the interposition of a court of chancery.

The bill contains no averment of a mistake in any matter of *fact.* It is not alleged, that the writings were not so drawn, as to effectuate the intention of the parties, *through the mistake of the scrivener.* On the contrary, it is alleged, that the scrivener was not even informed what the agreement between the parties was. Nor does the plaintiff pretend, that the note was executed by him under any mistake or misapprehension in regard to its terms. He knew it was a note, on the face of it, payable in three years. Indeed, the whole bill is so framed as to preclude the idea of a mistake in any one matter of fact. The mistake, if any, was in a mere matter of *law ;* and that, a mistake of rather an extraordinary character. It is simply, that the plaintiff mistook the legal effect of a plain note of hand : That he ignorantly supposed a note, payable, by the terms of it, in three years, to be, *in law,* a note payable at the death of the obligee ; and then not actually to be paid, but to be delivered up. And to show this mistake, we are asked to let in parol evidence. It would perhaps be not a little difficult to point to the source from which evidence of such a character could be derived. But waiving the difficulty, we are brought to consider the question, whether parol proof be admissible to show a *mistake in law ?* This is the naked question, presented by this motion.

The only *English* authority, from which the affirmative of this question derives any support, is that of *Lansdown* v. *Lansdown,* reported in *Mosely, p.* 364. Lord *Mansfield* pronounced the book to be of no authority ; and the case has been of-

ten questioned ; and the doctrine involved in that decision has been overruled, by the whole train of decisions on this subject. *Pullen* v. *Ready,* 2 *Atk.* 587.  Lord *Irnhan* v. *Child* & al. 1 *Bro. Ch. Ca.* 91.   *Underhill* v. *Howard,* 10 *Ves.* 209. 228. *Lyon* & al. v. *Richmond* & al. 2 *Johns. Ch. Rep.* 51.

The case of *Hunt* v. *Rousmanier,* 8 *Wheat.* 174. has been relied on, by the plaintiff's counsel.  That case would, indeed, seem to sustain the position, that a court of chancery will relieve against a mistake in law.   The bill in that case stated, that the plaintiff loaned to the defendant's intestate two sums of money of 1450 dollars and 700 dollars, for which his promissory notes were given ; and as collateral security, a power of attorney authorizing the plaintiff to execute a bill of sale of two vessels, the *Nereus* and the *Industry,* to himself or any other person ; and in case of loss, to collect the money, which should be due on a policy, by which said vessels and their freight were insured.  The instrument contained a proviso, that the power was given as a collateral security of the notes, and was to be void on their payment ; on the failure of which, the plaintiff was to pay the amount thereof and all expenses out of the proceeds of the said property, and to return the surplus to the said *Rousmanier.*  The bill then charged, that the said *Rousmanier* died insolvent, having paid only 200 dollars, on said notes.   The plaintiff gave notice of his claim, took possession of the vessels on their return from sea, and offered the intestate's interest in them for sale.  The respondents forbade the sale ; and the bill was brought to compel them to join in it.   The amended bill further stated, that it was agreed between the parties, that *Rousmanier* was to give a specific security on the vessels, and offered to give a mortgage ;—that counsel was consulted on the subject, who advised, that a power of attorney, such as was actually executed, should be taken, in preference to a mortgage ;—that the powers were accordingly executed, *with the full belief that they would, and with the intention that they should, give the plaintiff as full and perfect security as would be given by a mortgage.*  To this bill there was a demurrer ; which was sustained by the circuit court of *Rhode-Island,* and the bill dismissed.  From this decision, the plaintiff appealed to the supreme court.  The decree of the circuit court was reversed ; but it being a case in which creditors were concerned, the court passed no final decree, but remanded the cause, that the circuit court might per-

mit the defendants to withdraw their demurrer and answer the bill. Chief Justice *Marshall*, who pronounced the opinion of the court, in that case, fully recognized the principle, that parol evidence is not admissible to vary a written instrument ; and that the rule prevailed, as well in courts of equity, as in courts of law ; that courts of equity grant relief in cases of fraud and mistake ; and that in general, the mistakes against which a court of equity relieves, are mistakes in fact. He undertakes to derive an analogy from that class of cases, in which a joint obligation has been set up, in equity, against the representatives of a deceased obligor, who were discharged at law. The case of *Lansdown* v. *Lansdown* is cited, with the remark, that if it be law, it has no inconsiderable bearing on the case. The court remark : " We find no case which we think precisely in point ; and are unwilling, where the effect of the instrument is acknowledged to be entirely misunderstood, by both parties, to say that a court of equity is incapable of affording relief."

The case being remanded to the circuit court, was there tried, on the answer of the defendants ; and that court decreed, that the plaintiff was not entitled to the relief sought, and dismissed the bill. On an appeal, the case came again before the supreme court, (1 *Pet. U. S. Rep.* 1.) and the decree of the circuit court was affirmed. *Washington*, J., in pronouncing the opinion of the court, says : " The question then, is, ought the court to grant the relief which is asked for, upon the ground of mistake arising from any ignorance of law ? We hold the general rule to be, that a mistake of this character is not a ground for reforming a deed, founded on such mistake ; and whatever exceptions there may be to this rule, they are not only few in number, but they will be found to have something very peculiar in their characters." He then adverts to the case of *Lansdown* v. *Lansdown*, and remarks : " Admitting, for the present, the authority of this case, it is most apparent, from the face of it, that the decision of the court might well be supported, upon a principle not involved in the question we are examining." It would not, perhaps, be going too far to say, that the doctrines laid down by Ch. J. *Marshall*, in this case, were greatly shaken, by the subsequent opinion of Judge *Washington ;* and that taking the whole case together, it will hardly warrant a departure from principles long considered as settled. It is not an authority for the plaintiff. A decision in his favour

would, most obviously, be followed by all the mischiefs of parol evidence, as applied to written instruments ; and would, most effectually, abrogate the rule on this subject.

I am satisfied, that this ought not to be done ; and consequently, a new trial must be refused.

The other Judges were of the same opinion.

New trial not to be granted.