## DE WITT *v.* BARLY and SCHOONMAKER.

Upon an issue in regard to the mental imbecility of a grantor the opinions of unprofessional witnesses, founded upon personal observation of his appearance and conduct, may be given in evidence. The opinions received, however, must be confined to facts alone, and must not embrace any matter of law.

Such cases belong to that class of exceptions to the general rule, in which opinions are received *ex necessitate*, for the reason that the minute appearances upon which they depend cannot be so perfectly described as to enable a jury to draw a just conclusion from them. Questions of identity, of handwriting, of intoxication, mental imbecility from old age, and some questions of value belong, with others, to this class.

In such cases the witness must state as far as he is able the facts and reasons upon which his conclusion is founded that the jury may have all practicable means for estimating the accuracy of his opinion.

The former decision in this case (5 *Seld.,* 371) is to be taken only as determining that the opinions of unprofessional witnesses cannot be called out by questions in such a form as to involve in the answer matter of law as well as matter of fact; *e. g.,* whether the imbecility was such as to render the party legally incapable of executing deeds.

APPEAL from the Supreme Court. The action was to recover land. Both parties claimed under Henry De Witt, who was born in January 1761, made and published his last will and testament May 2, 1837, which devised the premises in question to the plaintiff: executed a deed of the premises June 18, 1849 to John Henry De Witt from whom the defendants derived title, and died May 7, 1850. The question litigated on the trial at the Ulster Circuit in April 1854, before Mr. Justice HARRIS and a jury, was the mental capacity of Henry De Witt at the time of executing the deed. He was then eighty-eight years old. The plaintiff gave evidence tending to prove that Mr. De Witt's faculties were gradually failing until 1846 when he became so enfeebled physically and mentally that he gave up all business, and the management of his estate and affairs was in the hands of John Henry De Witt, his youngest son, who kept his

De Witt *v.* Barly and Schoonmaker.

father and mother in his family upon the homestead farm. The following evidence was admitted under successive exceptions by the defendants to it as being merely the opinion of witnesses. One Snyder testified that he had known Mr. De Witt intimately for many years. The witness left the vicinity for some three years and when he returned and called on Mr. De Witt in July 1849, as he testified, "I observed a change in him; he did not know me; I made myself known to him; he either told me he did not know me or asked his wife who I was." To the question, how was his conversation at this time? the witness answered: "It was disconnected; he would talk about his horses and fall off on another discourse entirely disconnected; it was undoubtedly owing to this, that I could not get the information I desired." * * * * "He appeared to have entirely lost all recollection:" Another witness, Isaac Smith, to a question whether he discovered any change in Mr. De Witt before a certain previous date when he gave up the personal management of his farm answered "I did; it appears the old man was getting a little childish; I thought so; I was there every day; it appeared in his conversation; the way I found it out was this, that he would repeat one thing a dozen times in half a day, in his business on the farm; the old man was a little light-headed some way, I took it." Evidence was also given, under exception by the defendants, that Mrs. De Witt had said to different witnesses on different occasions, in the presence and hearing of her husband, that "he was incapable of doing business; there was no use in asking him as he was entirely childish." The jury found a verdict for the plaintiff; the judgment entered thereon was on appeal affirmed by the Supreme Court at general term in the third district and the defendants appealed to this court.

*T. R. Westbrooke* for appellants,

*Erastus Cooke* for respondent.

De Witt *v.* Barly and Schoonmaker.

SELDEN, J.   This case involves an inquiry into the nature
and extent of the exceptions to the general rule, that the
testimony of witnesses must be confined to facts, and that
their opinions are in all cases to be excluded.   The elemen-
tary works are not very clear upon this subject.   They
uniformly state that, upon all questions of science and skill,
persons specially instructed in the particular art or science
to which the question relates, may give their opinions : but
this is the only distinct class of exceptions which they admit.
Questions of identity, of hand-writing, &c., are treated by
Mr. Phillips, Mr. Starkie and Professor Greenleaf, as mere
isolated exceptions, and are not referred to any general rule
or principle.   If, however, we look into the modern deci-
sions, we will find another class of cases equally well
defined, and not less numerous than those involving ques-
tions of science, in which opinions are received *ex necessitate,*
as the only means of arriving at a just conclusion.   The
ground upon which opinions are admitted in these cases is,
that from the nature of the subject to be investigated, it
cannot be so described in language, as to enable persons not
eye witnesses, to form an accurate judgment in regard to it.
The principle is very clearly stated by JOHNSON J., in the
case of *Clark* v. *Baird* ( 5   *Seld.,* 183 ), and some striking
illustrations are there given.   The omission by the elemen-
tary writers, to classify this kind of cases, and to refer them
to the general principle upon which they rest, has led to much
judicial embarrassment, and in one of our sister states, to
some anomalous decisions.   Opinions have been almost
universally received upon questions of value.   A moment's
reflection is sufficient to show that, in some cases, to form a
correct judgment as to value would require a knowledge of
some branch of science, or of some particular art or trade ;
while in others no such knowledge would be necessary.
For instance the value of precious stones, could only be
accurately judged of by a lapidary ; of drugs and medicines
by a druggist &c. ; while to assess the value of a horse, a

De Witt *v.* Barly and Schoonmaker.

cow, or an article of household furniture, would require no such peculiar knowledge.

The Supreme Court of New Hampshire, therefore, in this latter class of cases, seeing and rightly judging that they did not come within the only class of exceptions recognized by the books upon evidence, refused to receive the opinions of witnesses. That this was the precise difficulty which led to the decisions referred to is plainly shown by the cases themselves. In *Peterborough* v. *Jaffrey* (6 *N. H.*, 462), where the question was as to the value of lands, the court say: "There could be no circumstance which could fix the marketable value of the land, which was a matter of *peculiar skill and knowledge* of the witness." Again, in *Beard* v. *Kirk* (11 *N. H.*, 397), which was trover for a sled, the deposition of a witness, who testified that he had been seven years engaged in teaming and had bought and sold many sleds; that he had seen the sled in question and should think it worth from $15 to $20, was rejected. PARKER, Ch. J., speaking of the witness, says: "He was not a manufacturer of sleds, if that might be supposed to indicate skill, nor was he otherwise possessed of any particular *science or skill* respecting their construction or use." The court in each of these cases tested the admissibility of the evidence by a rule having no application to the case, viz., that as to experts. Had their attention been directed by the works upon evidence to that other class of exceptions to the general rule to which I have referred, they could hardly have failed to see that no description of a sled could enable a jury to judge as accurately of its value as one who had an opportunity of examining it. Two sleds may be made of the same materials and the same dimensions, and the value of one be three times that of the other; as two horses may have legs of the same length, heads of the same size and hair of the same color, and yet be widely different in value.

The class of cases referred to is very extensive. It embraces questions of handwriting and of the identity of persons

and of things, as well as of value.   Questions, too, in relation to the age of absent persons obviously fall within the same rule.   No mere description of the wrinkles of the face, of the tones of the voice or the color of the hair would be likely to convey any very accurate impression as to the precise age of the person described.   The case of *McKee* v. *Nelson* (4 *Cow.*, 355) is an example belonging to the same class.   That was an action for breach of promise of marriage, and a witness who knew the plaintiff and had observed her conduct and deportment towards the defendant, was permitted to testify whether, in her opinion, the plaintiff was sincerely attached to him : a fact which it is plain could be proved in no other way.

*Trelawney* v. *Colman* (2 *Stark.*, 191) is another case of the same kind.   There, in an action for criminal conversation, a witness who was acquainted with the parties was permitted to give her opinion as to the degree of affection entertained by the wife for her husband.

In the case now under consideration the inquiry is presented, whether a question as to the mental imbecility of persons arising from age belongs to the same class.   It is said that this question was settled by this court in this same case when formerly here. (5 *Seld.*, 371.)   But before examining that subject, I wish to bring into view a distinction which has not always been observed.   It is a common idea that while the opinions of witnesses may always be taken upon questions of value, they are not admissible upon questions of damages.   Why is this?   Questions of damages often depend exclusively upon mere difference in value, and where this is the case, to give an opinion as to value is to give an opinion as to damages.   The two are identical.   But the difficulty in such cases is, that questions are so framed as to embrace an inquiry as to the legal rule of damages, and that is inadmissible.

Take for instance the case of *Morehouse* v. *Mathews* (2 *Comst.*, 514.)   The action was brought to recover damages

De Witt *v.* Barly and Schoonmaker.

for feeding the plaintiff's cattle with bad hay, The question put to the witness, as interpreted by the court, was: "How much, in your opinion, was the damage *sustained by plaintiff* in consequence of feeding the cattle the poor hay instead of that agreed upon?" This question was clearly improper, and so the court held; but they at the same time say that the witness might have been allowed to state "how much less valuable" the cattle were in consequence of the inferior quality of the food. Now, the only possible difference between the evidence rejected in this case and that held admissible consists in the form of the question. As put, it virtually called for an estimate of the damages which the plaintiff was entitled to recover; and as this estimate could not be made without first settling the legal rule of damages applicable to the case, the question was properly overruled. Had the inquiry been, what was the damage or injury to the cattle in consequence, &c., it would have been unobjectionable.

So, in the case of *Norman* v. *Wells* (17 *Wend.*, 136), a leading case on this subject, the offer was to show by the witness "the damages which in his opinion *the plaintiff* had sustained in consequence of the erection of Paddock's mill?" in other words, how much the plaintiff ought to recover upon that account? This offer clearly embraced the legal rule with reference to which the damages in the case were to be assessed, and hence it was rejected. Witnesses can never be called upon to express an opinion upon a question which belongs not to the jury but the court. I notice these cases simply for the clear illustration they afford of the distinction upon which the present case will be found in some measure to turn, viz., that between opinions which are confined to facts alone, and those which embrace matters of law as well as fact. I will refer to one or two other cases illustrative of the same distinction.

In the case of *Jameson* v. *Drinkald* (12 *Moore*, 148, 22 *Eng. Com. L. R.*), which was an action on the case growing

out of a collision at sea, several nautical men were examined as experts, some of whom were permitted to testify that " it was *the duty* of the plaintiff's captain," under the circumstances, to have kept his ship out of the way. Upon motion for a new trial, this evidence was held to have been improperly admitted, for the reason that it covered not merely the facts but the law of the case. Of course, what it is the duty of a person to do under given circumstances, is not a question of fact but of law. GASELEE, J., said : "As to the testimony of the nautical men, I am clearly of opinion that a scientific person called as a witness is not entitled to give his opinion as to the merits of the case, but only as to *the facts* as proved by other witnesses."

But the case which marks this distinction most clearly, and at the same time shows its application to the case under consideration, is that of *Gibson* v. *Gibson*, (9 *Yerg.*, 329). There, upon an inquiry as to the competency of a testator to make a will, this question put to a witness, viz.: "Whether, from the situation in which he saw the old man on that morning, and from the facts he had just stated to the jury, he believed the old man was then in his senses, and *capable of making a will*," was rejected. REESE, J., in delivering the opinion of the court, said : " The latter part of the question, ' capable of making a will,' as it involved a question of *law* and fact, and the very question to be determined by the jury, was entirely illegal."

Let us now see what was really decided by this court, when this case was before it upon a previous occasion. (5 *Seld.*, 371.) The only exceptions then presented to this court which could be supposed to involve the question we are considering, were those taken to the decisions of the court below, overruling objections to the inquiries : Whether, in the opinion of the witness, Mr. DeWitt, the grantor, first, " was capable of managing his affairs and business," and, secondly, " had capacity to comprehend and transact business."

Did not these questions embrace the whole law, as well as facts of the case? If it can be justly said of a person that he is incapable of managing his affairs, or that he has not capacity to transact business, the law adjudges that all his business transactions are void. The degree of mental imbecility which will warrant this conclusion, is a question of law; and one which has given rise to much discussion. ( *Stewart* v. *Lispenard*, 26 *Wend.*, 255.) An inquiry whether a man is capable of managing his affairs, or has capacity to transact business, to have any sensible meaning at all, must mean, whether he is possessed of the lowest degree of intelligence which would justify his being held legally competent to transact business; because no person is utterly destitute of intelligence; and, in one sense, a man can transact business as long as he can sign his name or give a verbal direction or assent. Such an inquiry is precisely equivalent to asking, in legal phraseology, whether the person is *compos mentis*. This is clearly a mixed question of law and fact; and before it can be answered, the degree of intelligence essential to legal competency, must first be determined.

The question, therefore, whether upon the trial of an issue as to the mental imbecility of a grantor, the opinions of non-professional witnesses can be taken as to facts merely, was not before this court upon the former hearing of this case, and thus could not have been decided. The questions presented were identical in principle with those passed upon in the cases of *Jameson* v. *Drinkald*, and *Gibson* v. *Gibson*, ( *supra* ), viz.: whether witnesses could be permitted to give their opinions in answer to inquiries which embrace the whole merits of the case, and leave nothing for either court or jury to decide.

My conclusion therefore is, that the former decision in this case, ( 5 *Seld.*, 371,) is to be considered as authoritative only for the doctrine that upon a trial involving the question of the mental imbecility of a testator or grantor, a non-professional witness cannot be asked the broad question whether

he considered the party *non compos mentis*, or, which is the same thing, incapable of managing his affairs. It is true that the abstract question, whether opinions can be received at all in such cases, was elaborately discussed; but if the question in that broad aspect was not before the court, as, if I am right, it clearly was not, then what was said upon it has not the weight of authority, but is a dictum merely; and as such, although entitled to high respect, is nevertheless open to examination.

To me it seems a plain proposition, that upon inquiries as to mental imbecility arising from age, it will be found impracticable in many cases to come to a satisfactory conclusion without receiving, to some extent, the opinions of witnesses. How is it possible to describe in words that combination of minute appearances, upon which a judgment in such cases is formed? The attempt to try such a question, excluding all matter of opinion, would in most cases, I am persuaded, prove entirely futile. Such an attempt was made in the present case; and the learned judge before whom it was tried, had I presume, the decision of this court before him, and intended to conform to it, but as I shall hereafter show, without success. A witness can scarcely convey any intelligible idea upon such a question, without infusing into his testimony more or less of opinion. Mental imbecility is exhibited in part by attitude, by gesture, by the tones of the voice, and the expression of the eye and the face. Can these be described in language so as to convey, to one not an eye-witness, an adequate conception of their force?

But I will not dwell upon this branch of the argument, so forcibly, and to my mind so conclusively, presented in the dissenting opinion of DENIO, J., upon the former hearing of this cause (5 *Seld.* 388). I wish, however, to call attention to one or two features of the prevailing opinion delivered upon that occasion.

The learned judge proceeds to discuss the question, first upon authority and then upon principle. He shows that in

De Witt *v.* Barly and Schoonmaker

the ecclesiastical courts of England, where, from the pecu-
liar jurisdiction of those courts, questions of this sort would
most frequently arise, the rule is uniform that the evidence
in question is admissible. He also shows, that it is held to
be admissible in the states of Vermont, Connecticut, Penn-
sylvania, Ohio, Maryland, North Carolina, Tennessee, Georgia
and Alabama; and he might have added in the courts of the
United States, and of the State of Indiana, if not other
states; and yet he comes to the conclusion that the rule is
not sufficiently "fortified by authority" to give it "a place
among our established principles of the common law."
This conclusion seems the more remarkable when we consi-
der the small amount of counter authority upon which he
relies. After remarking that he has examined the reports
of Westminster Hall, and has not been able to find "any
reported case allowing such evidence in any of the English
Common Law courts," he cites the cases of *Needham* v. *Ide*
(5 *Pick.*, 510), and *Sears* v. *Shafer* (1 *Bar. S. C. R.*, 412).
This constitutes all the authority which the learned judge is
able to adduce in opposition to the array of cases to which
he himself refers, in the English ecclesiastical courts, and
in nine of the states of the Union; an array which might
be rendered still more formidable by the addition of many
cases which he omits to notice.

But the disparity is even greater than would seem from
this hasty parallel; for of the two cases upon which he
relies, one is of itself of very little weight, and the other
does not support his position. In *Needham* v. *Ide*, which
involved the probate of a will, some of the witnesses, with-
out being asked, had expressed their opinion as to the sanity
of the testator, and no objections were taken. The judge
charged the jury that these opinions were not competent evi-
dence, and were not entitled to any weight, except so far as
they were supported by the other proof, and the court
afterwards refused to grant a new trial. No opinion was
delivered, and the ground upon which the new trial was

refused, does not appear. Under these circumstances, the case is certainly entitled to but very slight consideration, and yet it constitutes the only authority which the learned judge opposes to the numerous cases which he cites from the English and American courts. The other case upon which he seems to rely, viz: that of *Sears* v. *Shafer*, was decided by a single judge at special term, and simply holds, that the opinions of witnesses in such cases are to be disregarded, when not accompanied by any facts to sustain them. From this glance at the cases, it certainly strikes me, that few questions can be suggested, about which it is possible to raise a doubt, which are more conclusively settled by authority, than that under consideration.

But the learned judge also discusses the question upon principle; and although I think it equally clear in that aspect, I will not enter at large into the discussion, but will simply refer to one or two of the suggestions which he makes. He says in substance, that the question of sanity or insanity is one of extreme difficulty; and one which "requires in many cases the most comprehensive knowledge of the various mental phenomena, and especially those which characterize disordered states of the mind." He seems therefore to think, that it belongs to that class of questions, concerning which, men of science alone, *i. e.*, experts, can give their opinions.

Now, however true this reasoning may be, of cases of the mere *derangement* of mental powers otherwise vigorous, it has no application to cases of idiocy, or of imbecility from the natural decay of those powers. The latter class of cases depend upon indications which are equally patent to all; and a man of sound judgment and experience in life, can observe these indications, and draw just inferences from them, as well without as with a scientific education. But even in cases of insanity proper, if the derangement of the mind is general, science is rarely necessary to enable persons having opportunities for personal observation, to judge of

its existence. It is only when the derangement is partial, involving only a portion of the mental powers, or where it consists in some single hallucinated idea, that much difficulty arises. It would be far better to make of these cases an exceptional class, than to adopt a general rule in reference to them, which would include a much larger class, to which such rule could have no just application. But when we consider that witnesses whose opinions are received upon the ground that the facts and circumstances upon which an opinion is to be formed, cannot be adequately described in words, are never permitted to give their opinions upon a hypothetical case, or upon a state of facts detailed by others; that they can speak from personal observation only, and must state, so far as they are able to do so, the reasons upon which their conclusions are founded, it would seem that even in cases of monomania, little if any danger could arise from receiving their testimony; although it might be necessary in cases of peculiar difficulty, to call in the aid of persons having the requisite scientific knowledge and skill, to enable them to form a correct conclusion.

The rule authorizing the reception of opinions is no doubt exceptional. It is not a species of evidence which the law favors, but is admitted from necessity alone. Hence it is required that the jury should be furnished with every practicable means of testing the accuracy of the opinion. The witness must state, as far as he is able, the facts and reasons upon which he bases his conclusion; and if the jury are able to see, from this statement, that such conclusion is unfounded, they are of course to disregard it. This doctrine involves no such self-contradiction as that suggested by the learned judge, who expressly concedes the rule, when applied to cases other than that which he seeks to except from its operation. I am entirely unable, therefore, to see the force of the grounds upon which he comes to the conclusion that the opinions of witnesses in cases like the present, should, upon principle, be rejected. It is plain from what has been

said, that to adopt that conclusion would place this court in a position directly antagonistic to that of nearly every court, both in England and in this country, which has had occasion to pass upon the question.

But there is a still stronger reason for declining to follow the dicta contained in the opinion referred to. This court itself, since the former decision in this case, has, upon a question strictly analogous, unanimously established a different rule. I refer to the case of *The People* v. *Eastwood,* ( 14 *N. Y.,* 562 ). Upon the trial of that case, a witness was asked whether, at the time of the homicide, the prisoner was intoxicated. This question was objected to and excluded upon the ground that it called for the opinion of the witness. Exception was taken to this ruling, and upon that exception the case was brought to this court, where it was unanimously held that the evidence ought to have been received, and a new trial was granted for that among other reasons. The admissibility of the evidence was there placed upon the precise ground which has been assumed here, viz., that the appearances which indicate intoxication cannot be so perfectly described in words as to enable persons not eye-witnesses to judge with accuracy on the subject. The questions in that case and in this, are in principle identical, and opinions cannot be held inadmissible in the present case without virtually overruling that of *Eastwood.* There are few, I think, who would not regret to see this court brought in conflict, upon this important rule of evidence, with the courts of nearly all of the States and of the Union, as well as the ecclesiastical courts of England.

It was said upon the argument of this case that no question arises as to the admissibility of opinions in evidence; that no opinions were in fact received. Upon a careful examination of the testimony, however, I have been forced to adopt the opposite conclusion. The witness, Snyder, in testifying in respect to De Witt, the grantor, said: "He did not know me." This was objected to as embracing matter

of opinion, and the objection was overruled. Now, although it is clear that this remark was a mere expression of the opinion of the witness, yet as he immediately proceeded to give the facts from which he drew the inference, viz., that Mr. De Witt either said he did not know him or asked who he was, the objection may perhaps be regarded as removed. But in answer to the question, "How was his conversation at that time?" the witness said: "It was disconnected; he would talk about his horses and fall off entirely on another discourse, entirely disconnected. *It was undoubtedly owing to this that I could not get the information I desired to get.*" It cannot be denied that the latter part of this answer embraces matter of opinion, and it was objected to for that reason. I see no way of meeting the exception taken to the decision overruling this objection, except to hold that opinions were admissible. Again, the witness Isaac Smith, in answer to the question, "Did you discover any change in Mr. De Witt before you moved off the premises?" said: "I did. *It appears* the old man was getting *a little childish; I thought so.* * * * The old man was a little light-headed some way, *I took it*, in the way of business." The objection taken to this, as matter of opinion, was overruled and exception was taken to the decision. It is obvious that this entire answer consisted solely of an expression of the opinion of the witness, bearing in the most direct manner upon the very point to be determined. Unless opinions were admissible, it is quite apparent that the objection taken to this testimony was improperly overruled. It is clearly necessary, therefore, to pass upon the question which has been discussed.

The objection made to the reception of the witness' conversation with Mrs. De Witt is untenable. That conversation took place in the presence of Mr. De Witt, and was of a nature to call forth observation and comment from him. The manner of his receiving such remarks, made in his presence and hearing, had a bearing upon the question as to

his mental condition, and was undoubtedly competent evidence.

.The judgment should be affirmed.

All the judges concurred; DENIO. J., upon the ground that this case had been tried substantially according to the opinion of the court on the former appeal, and although as an original question, he thought opinions upon a question of capacity should be received, he considered the question as settled otherwise in this court.

Judgment affirmed.