[No. 6,179.]

## ESTATE OF TOOMES.

<div style="float:right">

54　509,
79　386

54　509
81　407

54　509
141　594

54　509
142　338

54　509
[149　24

</div>

Evidence—Expert—Insanity—Priest.—Upon an issue as to the sanity of the testatrix, in a contested will case, a witness (a Roman Catholic priest) was permitted to testify as to his opinion of the mental condition of the testatrix, and it was objected that he was not an expert. *Held*, upon the facts stated in the opinion, that the witness was an expert, and *the query made*, but not decided, whether it was necessary in such case that a witness should be an expert.

Id.—Privileged Communications—Priest.— The examination of the witness was confined to the facts, which were brought to his knowledge on a preliminary examination, made with a view to learn whether the testatrix was in a proper condition of mind to make a confession. *Held*, that it was not a privileged communication under § 1881 of the Code of Civil Procedure.

Id.—Insanity.—Upon the trial of an issue as to the sanity of the testatrix, at the time of executing the will, proof of her insanity at a time prior or subsequent thereto is admissible.

Id.—Error.—Whatever may be the rule as to the *admission of improper* testimony, the *exclusion of proper* testimony is always ground for reversal.

Will.—The name of a testatrix was subscribed to the will by one of the subscribing witnesses, and she declared the document to be her will in the presence and hearing of the witnesses, who subscribed their names at her request, and in her presence, and in the presence of each other. *Held*, to be a sufficient execution.

Appeal from an order refusing to revoke the probate of a will, in the Probate Court of Alameda County. Nye, J.

The facts are stated in the opinion.

*Leonard Reynolds* and *W. W. Cope*, for Appellants.

The witness Serda was not a medical expert, but having visited the testatrix and conversed with her, it was competent for him to testify as to her mental condition, and to state his opinion on the subject. ( *People* v. *Stanford*, 43 Cal. 29; *De Witt* v. *Bailey*, 17 N. Y. 340; 1 Redf. on Wills, 136–145; *Hardy* v. *Merrill*, 56 N. H. 227. The witness was peculiarly fitted by education and experience to form a correct opinion upon the subject, and nothing more was required by the statute to render his opinion admissible. (As to the definition of " expert," see Worcester; and also *Fairchild* v. *Bascomb*, 35 Vt. 408; *Dole* v. *Johnson*, 50 N. H. 453; and *Tullis* v. *Kidd*, 12 Ala. 648. )

The will was not executed and attested as required by the

statute. (Civ. Code, § 1276.) The signature does not comply with the provisions of § 14 of the Civil Code. (*Estate of Sulli-van*, 54 Cal. 000.)

*H. A. Leake*, *J. Chadbourne,* and *Wilson & Wilson*, for Respondent.

Under the 9th subdivision of § 1870 of the Code of Civil Procedure, in order to authorize a witness to give his opinion on a question of science, art, or trade, he must be skilled therein. Under the 10th subdivision, a subscribing witness to a writing and an intimate acquaintance may give their opinion respecting the mental sanity of a person, the reason for the opinion being given. It seems to be clear, from these provisions, that it was not intended to extend the rule of evidence beyond the class of persons designated; and a Catholic priest, not being embraced in the class provided for, was incompetent to give his opinion. (1 Redf. on Wills, 143, §§ 12, 153, 154, note 41; *Goldstein* v. *Black*, 50 Cal. 462: *Blood* v. *Light*, 31 Id. 115; *Swain* v. *Naglee*, 17 Id. 417; *Polk* v. *Coffin*, 9 Id. 57; *Reynolds* v. *Jordan*, 6 Id. 108.) The will was sufficiently executed and attested. (Civ. Code, §§ 1276, 1278.)

In bank, MORRISON, C. J.:

On the first day of August, 1877, a petition was filed in the Probate Court of the County of Alameda, by certain persons therein named, for the revocation of the probate of the will of Mary Isabella Toomes, deceased, and for the cancellation of letters testamentary granted by said Court, upon such probate, to one John S. Butler. The grounds set forth in said petition are: "1st, that said will was a forged instrument; 2nd, that the said Mary Isabella Toomes was not, at the date of said pretended will, of sound disposing mind or memory, nor free from undue influence; but, on the contrary, was of unsound mind, and incompetent, by reason thereof, to make a will; and further, that if said alleged will was ever made by her, she never understood its contents, but was imposed upon and deceived, and that she executed the same under fear, and undue influence; and

3rd, that said purported will was never subscribed by said Mary Isabella Toomes herself, in any manner, by mark or otherwise, nor was her name ever subscribed thereto, in any manner, by mark or otherwise, in her presence or by her direction, by any person, nor did any person write his name to said purported will, as an attesting witness to her mark or to her signature by mark."

To this petition an answer was duly filed, containing a specific denial of all the material allegations contained in the petition; and the case having been duly heard and considered by the said Probate Court of Alameda County, a decree of said Court was entered therein, on the 26th day of June, 1878, denying the application of the contestants, and ratifying, approving, and confirming the probate of the said will of the said Mary Isabella Toomes, and adjudging the said will to be in all respects legal and valid. In proper time, petitioners filed their bill of exceptions, and now bring the action of the Probate Court before this Court for review.

On the trial in the Court below, one Lawrence Serda was called as a witness on behalf of contestants, who, on his examination-in-chief, testified as follows: " I called there alone about three o'clock the day previous to her death. Afterward told Father Lagan. I went into the room, and inquired about the state of her health. She didn't give me any answer; in fact, she didn't seem to take much notice of me at all. I remained there a few minutes. In the same room there was a lady. She was afterward introduced to me as Mrs. Butler. As I could not get a proper answer from the old lady, I requested Mrs. Butler to move out of the room, which she did very kindly, and then I asked the old lady the questions preparing her for the confession. At first, I spoke to her in Spanish, but she gave me an answer in English. I do not remember what her answers were."

*Question by contestants.*—" Were her answers responsive to your questions?" Objected to by proponents. Objection sustained, and exception taken by contestants.

Witness was then further interrogated, and testified as follows: " I was regularly educated for the priesthood at a uni-

versity in Spain, and have officiated as a priest for the past ten years. That one of the objects of the preparatory education of a priest, as he was taught, was to make him competent to pass upon the mental condition of a communicant. That for that purpose, to a limited extent, physiology and psychology were branches of his studies. That previous to officiating as a priest, it was requisite that he should be skilled in determining the mental condition of those who sought the sacraments; that in every case of the administration of the rites of his church to invalids or dying persons, it was necessary for the priest to make an examination of the mental condition of the recipient, to ascertain if his mind was in a proper state to reason or act of its own volition. That the sacrament could only be administered after such a preliminary examination. That, therefore, as a priest, he was daily required to exercise and pass his judgment on the mental condition of persons."

*Question by contestants.*—" State the mental condition of Mrs. Toomes as she appeared to you during this visit."

Question objected to on the ground that " the witness had not been shown to be an expert." The Court sustained the objection, and the contestants excepted to the ruling of the Court.

It is claimed, on behalf of the appellants, that this was error. Section 1870 of the Code of Civil Procedure reads as follows: " In conformity with the preceding provision, evidence may be given upon a trial of the following facts:

" Subdivision 9. The opinion of a witness respecting the identity or handwriting of a person, when he has knowledge of the person or handwriting; *his opinion on a question of science, art, or trade, when he is skilled therein.*"

" On questions of science, skill, or trade, or others of the like kind, persons of skill, sometimes called *experts*, may not only testify to facts, but are permitted to give their opinions in evidence. Thus the opinions of medical men are constantly admitted as to the cause of disease, or of death, or the consequences of wounds, and as to the sane or insane state of a person's mind, as collected from a number of circumstances, and as to other subjects of professional skill; and such opinions are admissible

as evidence, though the witness founds them, not on his personal observation, but on the case itself, as proved by other witnesses on the trial." (1 Greenl. on Ev. § 440.)

The principle is thus stated by another writer on the law of evidence: "The opinions of witnesses possessing peculiar skill are admissible wherever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study, in order to the attainment of a knowledge of it. (Best on Evidence, vol. 2, § 513.)

It will thus be seen that the provision of the Code permitting a witness to give his opinion on a question of science, art, or trade, when skilled therein, is but a legislative enactment of a well-settled rule of evidence at common law; and the inquiry here is, whether it sufficiently appears that the witness Serda was an expert upon the question of mental disease, generally termed insanity.

It has been a question with the Courts whether the rule upon this subject was limited to the opinions of experts; and in a very late and elaborate case before the Supreme Court of New Hampshire, it was held that it was not so limited. "Non-professional witnesses, who are not subscribing witnesses to a will, may testify to their opinions in regard to the sanity of a' testator, when founded upon their knowledge and observation of the testator's appearance and conduct." (*Hardy* v. *Merrill*, 56 N. H. 227.) And Mr. Redfield, in his work on wills, seems to adopt the rule laid down in the New Hampshire case as correct. The following is his language: "The learned Judge shows very conclusively, both upon authority and reason, that the opinion of the unprofessional witness in such a case is commonly far more reliable as a basis of ultimate decision on questions of sanity and mental capacity, than any specific facts which could possibly be gathered from the witnesses. * * * The tendency of American courts in the last few years has been largely in the direction contended for by the learned Judge; and there seems to be no question that it must ultimately prevail all but univer-

sally. We should rejoice at such a result as greatly tending toward the establishment of truth, with greater facility and certainty, in a very important class of cases." (1 Redfield on Wills, [4th ed. 1876] 138, 145; *De Witt* v. *Barly and Shoemaker*, 17 N. Y. 340.)

It is not necessary for us, however, to pass upon the question of the admissibility of such evidence in this case. The witness Serda, it is claimed, *was an expert*, and it is upon the ground that he was an expert that the alleged error in the ruling of the Court below is predicated. The inquiry then is, what is an expert? "Experts, it has been said, are persons instructed by experience." (Best on Evidence, vol. 2, p. 368.) Webster's definition is, "taught by use, practice, or experience." Worcester says an expert "is a person having skill, experience, or peculiar knowledge on certain subjects or in certain professions—a scientific witness." The following definition is given by Bouvier: "Experts—Witnesses who are admitted to testify from a peculiar knowledge of some art or science, a knowledge of which is requisite or of value in settling the point at issue; persons conversant with the subject-matter on questions of science, skill, trade, and others of like kind."

In the case of *Fairchild et al.* v. *Bascomb et al.* 35 Vt. 408, the Court says: "Persons who are much accustomed to attend upon the sick—to watch the progress of diseases to their end, and to be with the dying, are by their experience enabled to form a better judgment as to the course of disease, and its probable effect upon the body and mind in the last hours of life, than others who have no such opportunity. Physicians who are in general practice, and nurses, thus become experts in such matters, so far as observation and experience can furnish knowledge." "One who is not engaged in the practice of physic may, nevertheless, be competent to testify, if he shows that he had studied the science of medicine, and felt competent to express a medical opinion upon a particular disease. The fact that he was not a practicing physician would go to his credit." (*Tullis* v. *Kidd*, 12 Ala. 648.) "It has been decided often that medical experts may express a direct opinion upon the sanity of the testator, when they have had an opportunity to form such opinion

from personal examination and acquaintance." (Redfield on the Law of Wills, vol. 1, p. 154–5.)

The foregoing citations are sufficient to establish the general rule on the subject of "expert" testimony, and now let us apply the rule to the facts of this case.

Was the witness Serda an expert on the question of insanity? Was he skilled in the science of mental diseases? A reference to his evidence will answer these questions. He says he was regularly educated in a college of Spain, and had officiated as a priest for ten years. That it was a part of his preparatory education to become competent to pass upon the mental condition of communicants in his church, and for that purpose physiology and psychology were branches of his studies. "That previous to officiating as a priest, it was requisite that he should be skilled in determining the mental condition of those who sought the sacraments. That in every case of the administration of the rites of his church to invalids or dying persons, it was necessary for the priest to make an examination of the mental condition of the recipient, to ascertain if his mind was in a proper state to reason or act of its own volition. That the sacrament could only be administered after such a preliminary examination, and that, therefore, as a priest, *he was daily required to exercise and pass his judgment on the mental condition of persons.*"

It has been shown by the authorities already referred to, that physicians in general practice, who have never made a specialty of the subject of insanity, as well as physicians who are not engaged in the practice of their profession, and also nurses, are deemed experts on this subject; and on what principle, or for what reason, could the witness Serda be held not to be an expert? It was a part of his collegiate education, and it was especially a matter of daily practice with him, for ten years, to familiarize himself with the mental condition of persons upon whom he was called on to attend in his character as a priest; and it does seem to us, that, from both education and experience, he was peculiarly qualified to express an opinion, as an expert, on the question of mental disease.

The objection that the inquiry invaded the secrecy of the

confessional is not, in our opinion, well taken.    It is not pre-
tended that the testatrix ever made a confession, and the matter
upon which the witness was interrogated did not come within
the letter or spirit of § 1881 of the Code of Civil Procedure.
"A clergyman or priest cannot, without the consent of the per-
son making the confession, be examined as to any confession
made to him in his professional character, in the course of dis-
cipline enjoined by the church to which he belongs."    The
above is the prohibition found in the Code.    The examination
of the priest was confined to facts which were brought to his
knowledge on a preliminary examination, and with a view to
learn whether Mrs. Toomes was in a proper condition of mind
to make a confession, and nothing more.    But it is claimed that
the testimony was inadmissible, because the excluded proof re-
lates entirely to the condition of Mrs. Toomes at a period sub-
sequent to the execution of the will.    The learned counsel for
respondent has cited several authorities for the purpose of show-
ing that proof of insanity, at a given time, raises no presumption
of insanity prior thereto.    We understand the rule to be, how-
ever, that proof of insanity, not only at the time the act was
done, but both before and subsequent thereto, is admissible.
(1 Redfield on Wills, 156–157 ; *Kinne* v. *Kinne*, 9 Conn. 104;
*McAllister* v. *The State*, 17 Ala. 436; *Peasley* v. *Robbins*, 3
Metcalf, 164; *McLane* v. *The State*, 16 Ala. 672.)

It is further claimed that the admission of the rejected evi-
dence would not have changed the result; *therefore* no injury
has been done the appellants by the ruling of the Judge exclud-
ing the evidence of the witness Serda.    In *Spanagle* v. *Dellin-
ger*, 38 Cal. 278, it was held that a new trial should be granted,
because incompetent evidence was admitted; although the Judge
who tried the case held, in denying a motion for a new trial,
that his decision would have been the same if the evidence had
not come in: and in the case of *Sweeney* v. *Riley*, 42 Cal. 402,
the case of *Spanagle* v. *Dellinger* was referred to in terms of
approval, and it was there said that "injury will be presumed
from error, where we cannot see from the record that none has
been done."    But whatever the rule may be upon this point,
when *improper* evidence has been *admitted*, not changing the

result, it seems to be well settled that *the exclusion of proper* evidence is ground of reversal. In the case of *Arthurs et al.* v. *Hart,* the Supreme Court of the United States says: "The case of the refusal of proper evidence on the trial is subject to very different considerations from those applicable to the improper admission of it. The exclusion of the evidence might change the legal features of the cause, and lead to a determination of it upon principles wholly inapplicable, in case the evidence had been admitted. * * * We think, therefore, that the improper rejection of testimony on the trial before the Judge, where the jury has been dispensed with, should constitute the subject of review on the writ of error, as in the case of a trial before a jury." (See 17 How. U. S. 6.)

The rejection of the evidence of the witness Serda was error, for which the judgment must be reversed. But there are two other questions in the case upon which it may be proper for us to pass.

The objections to the will made by contestants, on the ground that the same was not executed and attested as required by the provisions of the Civil Code, are not well taken. In the first place, it is claimed by contestants that the subscription was not made in the presence of the attesting witnesses, and that the testatrix did not acknowledge before them that the will was made by her authority. We are of the opinion that the evidence in the case was sufficient to justify the Court below in holding that the will was executed in accordance with § 1276 of the Civil Code. The witness Leake, by whom the will was written, testified as follows: " I said to her: 'It is not necessary that you should write your name. I will write your name and you can make your mark.' She said, 'Well.' I immediately went back to the table and wrote her name. I think I sat down. I wrote her name, and then walked back to the bed, and I think Judge Lawton took a pen up, as he had been there all the time, and dipped it in the ink-bottle ; some one held the ink-bottle on the bed. I said: 'This is your signature. I have written your name, and you can make your mark.' I took hold of the pen, and she made her mark by touching the pen at the top. I am positive she touched the pen. I then said: 'Do you

acknowledge this to be your signature?' She said: 'Yes.'
I then read the attestation clause as it appears here, distinctly,
and then put these questions: 'Do you declare this to be your
last will and testament, and do you now request Judge Lawton
and myself to sign it as subscribing witnesses?' She said:
'Yes,' freely and distinctly. I then immediately wrote my
name with the same pen that the mark was made with. The
will was resting on a book, the book rested on the bed immedi-
ately before her; she was looking at it all the time. Judge
Lawton wrote his name while the paper was resting on the
book immediately before Mrs. Toomes, in my presence."

Here we have the fact that the testatrix made her mark to
the instrument, the declaration that it was her will and testa-
ment, made in the presence and hearing of the witnesses, and
the fact that the witnesses subscribed the same at her request,
in her presence, and in the presence of each other, distinctly
testified to by the witness Leake. We think this was sufficient.

The last objection made by the appellants that we will notice,
is, that the will is insufficiently witnessed. It is claimed that
the party who wrote the name of the testatrix should have
signed his name as a *part of the signature*; that "his name
was an essential part of the signature," and that a witness to
the signature cannot be a witness to the will. We are unable
to see the force of this objection. Section 1278 of the Civil
Code provides, that a witness to a written will must write his
name and his place of residence; and a person who subscribes
the testator's name, by his direction, must write his own name
as a witness to the will. But a violation of the section does not
affect the validity of the will.

In our opinion, the requirements of the above section were
complied with in the present case.

Judgment reversed.

SHARPSTEIN, J., THORNTON, J., and MYRICK, J., concurred.