## ALICE VAN WAGONER, RESPONDENT, *v.* THE NEW YORK CEMENT COMPANY, APPELLANT.

*Evidence — when expert testimony as to the injury caused to the market value of a horse by its having run away is inadmissible — how the injury should be proved.*

Upon the trial of this action, brought to recover damages alleged to have been sustained by the plaintiff's horse and wagon, by reason of the defendant's negligence, witnesses called by the plaintiff were allowed. against the defendant's objection and exception, to testify as to the effect upon the value of a kind and gentle horse of having ran away, while being driven along the road, by reason of its being run into by a car crossing the road on a tramway, and its having run a quarter of a mile before being stopped; such witnesses testified that it would reduce the market value of a horse fifty per cent, though it should not run away for years afterwards.

*Held*, that the court erred in admitting the evidence.

The proper mode of reaching the amount of injury to the market value of a horse, because of its running away, without being wounded or physically injured, is to prove the habits of the animal before the occurrence, the circumstances attending it and how the particular horse was then and afterwards affected by it; also the description of the horse and its value prior to the runaway. These facts should be laid before the jury, and the question of damages left to them for determination.

APPEAL from a judgment of the County Court of Ulster county, entered upon the verdict of a jury in favor of the plaintiff, and from an order denying a motion for a new trial made upon the judge's minutes.

*F. L. Westbrook*, for the appellant.

*Howard Chipp, Jr.*, for the respondent.

BOCKES, J. :

This is an appeal by the defendant from the judgment of the County Court of Ulster county, rendered on the verdict of a jury ; and also from an order denying a motion for a new trial on the judge's minutes.

The action was brought to recover damages alleged to have been caused to the plaintiff's horse and wagon, through the defendant's negligence.

The defendant's business was the manufacture of cement for market, its mill standing on the west of the public highway, and its store-house on the opposite or east side. The cement, being put in barrels at the mill, was taken to the store-house on platform cars by means of a tramway. At the time of the injury complained of the defendant's servants were taking a car-load of cement upon the tramway from the mill across the highway to the store-house, when the plaintiff's husband was driving her horse with a wagon along the highway. The loaded car and the horse and wagon reached the crossing simultaneously, or nearly so, when the horse sprang over the car, ran away, and both horse and wagon, as was claimed, were greatly injured.

The first point urged as error is that the plaintiff failed to make a case for the jury on the proof and should have been nonsuited. We conclude otherwise. All the circumstances attending the occurrence — the manner in which the loaded car was handled, whether or not entirely manageable ; also, whether due care was exercised by the driver of the horse to avoid accident — were laid before the jury and it was for them to determine therefrom the question of negligence as to the defendant ; as also, whether there was negligence which contributed to the injury chargeable to the plaintiff. These subjects were, as we think, for the jury on all the proof ; and the case seems to have been sent to the jury under correct instructions by the court as to the law applicable to it. The motion for nonsuit was properly denied.

The difficulty in the case grows out of what is claimed to be the erroneous admission of evidence. The witness Shader testified that he knew the horse in question ; had bought and sold horses ; was somewhat acquainted with the value of horses ; and should judge this one to be worth from $250 to $300. He also testified that

from his experience with horses, the fact that a horse had run away would have a bearing upon its market value. The question was then put to him : " Suppose *a mare* was worth $250, and should be driven along a road and be run into by a cement car, the wagon broken and the mare should run up the road for a quarter of a mile and be stopped, what would you consider her worth after such a runaway ? " Being allowed to answer against objection, the witness replied : " That would depend a good deal upon how she was scared or hurt; it might have been thoroughly scared and be worth half the value; a horse may run away without being frightened. Q. Suppose a horse has run away and been badly frightened ? A. If a horse is badly frightened she might not be worth half the value." The witness Dolson was examined and testified much the same as did Shader, fixing the value of the mare before the runaway at $200. A question similar to that put to Shader, above set out, was then put to this witness, having this difference, however, that the question was directed to " this mare," the one in question, instead of to " a mare." The witness was allowed to answer : " I would not want to give over seventy-five dollars for her ; I put her value at seventy-five dollars." On his cross-examination the witness said : " I have never known of horses that have run away once and never again ; I do not know how much it would affect the value of a horse if it had run away once and never run away but that once." A motion to strike out the evidence of this witness bearing on the question of damages because of the runaway, was denied and exception was entered. The witness Sparling testified that he had bought and sold horses; was acquainted with the value of horses and the elements that go to make up the value of horses ; and that he should think the fact of a horse having run away had a bearing upon its market value. This question was then put to him : " Suppose *a mare*, nine years old, kind and gentle, should be driven along the road and be run into by a cement car, which broke the wagon, and the mare should run away and run a quarter of a mile before being stopped, would that have a bearing upon its market value ? " He was allowed to answer as follows: " It would affect the market value one-half or more if she ran away but once and never for years afterwards ran away again." It does not appear that this witness knew

or ever saw the mare in question. We think this line of examination touching the alleged damage to the horse because of the runaway plainly inadmissible. It was laid down in *Morehouse* v. *Mathews* (2 N. Y., 514), that it is not, in general, competent for witnesses to state opinions or conclusions from facts, whether such facts are known to them or derived from the testimony of others; that the exceptions to this rule are confined to questions of science, skill, trade and a few others of the same nature. The cases also include among the exceptions questions of the value of property. This subject has been examined in very many cases since the decision in *Morehouse* v. *Mathews*, but nowhere, perhaps, has it been considered with greater clearness and precision than by Judge SELDEN in *De Witt* v. *Barly* (17 N. Y., 340). In a case involving matters of skill or science, the question is one as to expert evidence. Not entirely so, however, in a case involving the value of property merely. The principle abstracted from the opinion in *Westlake* v. *The St. Lawrence County Mutual Insurance Company* (14 Barb., 206) was to the effect that the opinion of a witness in respect to the value of property, which he has never seen, is not admissible. This would exclude hypothetical questions, such as were permitted in this case. As bearing upon this point, the remark of Judge SELDEN in *De Witt* v. *Barly* (above cited) has peculiar force. He says by way of illustration : " Two sleds may be made of the same materials and the same dimensions, and the value of one be three times that of the other ; as two horses may have legs of the same length, heads of the same size, and hair of the same color, and yet be widely different in value." In *Jay* v. *Hopkins* (5 Denio, 84) the action was for breach of warranty on the sale of a cow. A witness was allowed to state what the cow would have been worth if " good and young ; " but this was held to be inadmissible, because, as stated in the opinion of the court, " the question was what that cow, which the witness had seen and knew, was worth, giving four quarts of milk ; and not what an imaginary animal giving that quantity would be worth." The line of argument in *Clark* v. *Baird* (9 N. Y., 183) is against the allowance of hypothetical questions to witnesses as to the value of property which they have never seen and of which they knew nothing. In closing his opinion in this case, Judge JOHNSON seems to limit the rule

which allows such questions to cases of inquiry as to scientific opinion by skilled experts, in which case the witness need know nothing, of his own knowledge, as to the facts of the particular case. To the same effect is the conclusion of the same learned judge in *Harpending* v. *Shoemaker* (37 Barb., 270). (See, also, *Terpenning* v. *The Corn Exch. Ins. Co.*, 43 N. Y., 279 ; and *Schermerhorn* v. *Tyler*, 11 Hun, 549.) As to the question put to Shader, it was directed to "a mare," that is, any mare worth $250. He answered that, if thoroughly scared, the animal might after the runaway be worth one-half its former value. Such is the purport of his evidence. The question to Dolson was directed to the mare in question, which he thought worth $200 before the runaway. He put her value after the runaway at seventy-five dollars, but he put it at that sum on the hypothesis she was run into by a car of cement and ran a quarter of a mile without being stopped. He did not pretend to know how the runaway had, in fact, affected this animal, nor was his answer based on any information from other witnesses in that regard. He also testified that he did not know how much the value of a horse would be affected by one runaway in case it never ran away again. The witness was not shown to be competent to speak upon the subject as to which he testified, and the motion to strike out his evidence should have been granted. The question put to Sparling, and his response to it, was more objectionable, if possible, than in the case of the other two witnesses above adverted to. It did not appear that he had ever seen the mare in question. He was inquired of as to "a mare" (any mare) nine years old, kind and gentle. He fixed a kind of per centage as an estimate of injury to all such mares that ran away once, and never again for years afterwards ; that is, that such runaway would injure the market value of the animal to the extent of fifty *per cent*. Now, Shrader spoke intelligently, when he said that the injury to a horse from a runaway would depend upon how greatly the animal was scared or hurt by it; that a horse might runaway without being frightened. It is manifest to every person of observation that a runaway does not affect all horses alike as regards their future safety in use. One would be a dangerous animal to use during all its future life ; while another would be affected by it but slightly, if at all. The injury from such a cause will depend much on the

disposition and temperament of the animal, and as the witness stated, how thoroughly it was frightened. So, it is apparent that the mode of reaching the amount of injury in its market value to a horse because of its running away, without wounding or physical injury to it, on a trial involving that question, must be to prove the habits of the animal before the occurrence, the circumstances attending it, and how the particular horse was then and afterwards affected by it; also a description of the horse and its value prior to the runaway. These are *facts* to be established by proof, and when laid before the jury the question of damage by way of injury to the animal is for the jury to determine. In this case there was no question of science, skill or learning involved to make the evidence objected to admissible. (See recent case of *Ferguson* v. *Hubbell*, 97 N. Y., 507.) Such is rarely the case in determining questions of mere value. As said by Judge SELDEN in *DeWitt* v. *Barly*: "In some cases to form a correct judgment as to value would require a knowledge of some branch of science, or of some particular art or trade; while in others no such knowledge would be necessary; for instance, the value of precious stones could only accurately be judged of by a lapidary; of drugs and medicines by a druggist; while to assess the value of a horse, a cow, or an article of household furniture, would require no such peculiar skill."

In the case in hand there was no subject of art, science or skill involved, making hypothetical questions, or the opinion of witnesses admissible. (*Ferguson* v. *Hubbell, supra.*) The cases cited by the learned counsel for the respondent (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y., 42; *Cowley* v. *The People*, 83 id., 464; *Dilleber* v. *Ins. Co.*, 87 id., 79) involved the subject of expert evidence in its strict sense; therefore, they are not here in point. In *Stearns* v. *Field* (90 N. Y., 640) the court was careful to say that neither the competency of the witness nor the mode of proof was disputed. So the question here under consideration was not in that case. The case of *Whiton* v. *Snyder* (88 N. Y., 299) comes nearer the case in hand. There it was held to be competent for a dealer in clocks to speak of the value of a clock he had never seen, basing his opinion on a description of the article given by another witness. But this does not reach the case of a horse, to describe which accurately and perfectly in language is impossible. It must be seen to be appreciated and valued.

Its form, style, movements, disposition and temperament—knowledge of all which can only be obtained by actual inspection and observation of the particular animal — enter into the subject and constitute grounds for an intelligent judgment or opinion of its value. This, however, does not touch the question as to the admissibility of expert evidence bearing on the amount or extent of injury to the animal from having at some time run away without causing any wound or perceptible physical injury to it. The subject of injury in such a case is for the jury on the facts proved in its entirety, as well as to the fact of injury, as also to the damages resulting from it. No question of science or skill is then involved making expert evidence admissible. On this subject the reasoning of the court in *Ferguson* v. *Hubbell* (*supra*) is entirely conclusive. The learned judge there says that "the opinions of experts cannot be received when the inquiry is into a subject, the nature of which is not such as to require any peculiar habits or study in order to qualify a man to understand it;" and further, "to warrant its introduction the subject of the inquiry must be one relating to some trade, profession, science or art, in which persons instructed therein by study or experience may be supposed to have more skill and knowledge than jurors of average intelligence may be presumed generally to have;" and it is added "the jurors may have less skill and experience than the witnesses, and yet have enough to draw their own conclusions and do justice between the parties." We are of the opinion that the questions above referred to, with the evidence given in response to them, were improperly admitted. For this reason, without examining other questions urged upon our consideration, there must be a new trial.

Judgment and order appealed from reversed, new trial granted, costs to abide the event.

LANDON, J.:

How much this mare was injured in value by the runaway in question was best known to those who knew and had observed the mare both before and after the occurrence. Not to call such persons was possibly to suppress an easily obtainable truth. To call persons who had not had the opportunity of such observation, and to take their opinions as to possible damages, was to give the plain-

tiff an opportunity to recover for supposed injuries which possibly were never sustained. For these reasons, as well as for those adduced by my brother BOOKES, I concur for reversal.

Present — LEARNED, P. J., LANDON and BOOKES, JJ.·

Judgment reversed, new trial granted, costs to abide event.