# HARPENDING vs. SHOEMAKER.

The opinions of witnesses, properly qualified to speak upon the subject, are competent evidence to aid in establishing how much or what proportion of the grain was left upon the straw, by a tenant, after threshing buckwheat. Thus where, in an action by a landlord, against his tenant, to whom he had leased a farm on shares, to recover damages for a waste of crops, &c. the issue was whether the defendant, in securing and threshing the crops, had performed the labor in such a negligent, unskillful and unworkmanlike manner that such crops, or a portion thereof, had been lost, a witness, after having stated that he had owned a farm, and had been a farmer; that there

were 126 bushels of buckwheat after it was threshed; that he had examined the straw, and that he thought it was not threshed clean, &c., was asked, " How much less buckwheat was there, than there would have been if the same had been properly threshed?" *it was held* that the question was proper, and that the answer to it was improperly excluded.

Under a complaint containing a count for an indebtedness from the defendant to the plaintiff, for hay, corn and other property sold and delivered by the plaintiff to the defendant, at his request, and for money had and received, the plaintiff offered to prove a tortious taking, the sale of the property, and the receipt of the money by the defendant, and to waive the tort, and go for the money had and received, or for the value of the hay and the corn, as for goods sold and delivered. *Held* that the plaintiff should have been allowed to prove the conversion of his hay and corn, by the defendant, and the receipt of the money therefor.

The receipt of the money, by the defendant, to the plaintiff's use, is the fact which constitutes the cause of action, in such a case.

Mere speculative opinions are not competent evidence, unless in the case of experts.

In respect to unprofessional persons, opinions, to be competent evidence, must be such as to constitute, in some degree, knowledge of existing facts.

THIS was an appeal from the county court of Yates county, affirming the judgment of a justice's court. The action was brought to recover, (1.) For a breach of a contract entered into between the parties for the working of a farm of the plaintiff's by the defendant on shares, claiming that the defendant did the work and labor in so negligent, unskillful and unworkmanlike a manner that the crops were lost, injured and destroyed. (2.) To recover for the sale of goods, wares and merchandise by the plaintiff to the defendant. (3.) For and on account of moneys had and received by the defendant to the use of the plaintiff. (4.) For the use and occupation of certain premises, and the pasturage of cattle, &c. by the plaintiff for the defendant. The answer put in issue the allegations of the complaint, and alleged that the plaintiff was indebted to the defendant for work and labor, money, grain, &c. The cause was tried by a jury. The plaintiff offered to prove that the defendant took a stack of hay belonging to the plaintiff, and sold the same, and converted the money received therefor to his own use, and to.

waive the tort and charge for money had and received, or goods sold and delivered. The defendant objected to the evidence, on the ground that no such cause of action was stated in the complaint, and it was excluded by the justice. The jury found a verdict for the defendant for $62.72, upon which judgment was rendered by the justice, with $5 costs. The Yates county court affirmed the judgment, and the plaintiff appealed to this court. Two grounds for reversal were insisted on by the appellant, viz: 1st. That the justice erred in rejecting the opinion of the witness as to the quantity of buckwheat left in the straw. 2d. That the justice erred in refusing to allow the plaintiff to change his cause of action, on the trial, from assumpsit to tort, or in not permitting him to prove a cause of action not embraced in his complaint.

*Chas. S. Baker,* for the appellant. I. The justice erred in refusing to allow the plaintiff to answer the question, " How much less buckwheat was there than if the same had been properly threshed ?" The question was objected to by the defendant. 1st. Upon the ground that it calls for the opinion of the witness. 2d. That the witness was not competent to give an opinion. The answer to the question only required of the witness the statement of a fact, and is not obnoxious to any objection that can be raised. If he knew how much there was he could say so, if not he could say he could not tell. As to the second objection, the witness had clearly stated facts sufficient, if it was competent to express an opinion at all, to come within the rule. (*Van Deusen* v. *Young,* 29 *Barb.* 19, 20, 21, *opinion of Hogeboom, J. sub. IV. Pullman* v. *Corning,* 5 *Selden,* 94, *opinion of Johnson, J.*) As to the first objection, we claim it is untenable, and cannot be sustained either upon principle or authority. The general rule upon this subject, that a witness cannot in general be allowed to testify to opinions as distinguished from facts, is not denied ; but we claim that, like all other general rules,

Harpending *v.* Shoemaker.

it has its exceptions, and those too as well settled as the rule itself. Among them are, (1.) Experts are permitted to express opinions. (2.) Opinions are received *ex necessitate* where, from the nature of the subject to be investigated, it cannot so be described in language as to enable persons not eye witnesses to form an accurate judgment in regard to it. (3.) They are received on the ground of the superior advantages which a personal observation of the facts afford. (*Rochester and Syracuse R. R. Co.* v. *Budlong*, 10 *How. Pr. R.* 289. *De Witt* v. *Barly*, 17 *N. Y. Rep.* 340, 342. *Clark* v. *Baird*, 5 *Selden*, 183, 196.) To the 2d and 3d exceptions to the rule belong opinions in regard to the handwriting of a party; the value of a domestic animal, (5 *Denio*, 84; 22 *Barb.* 136; *Id.* 652; 29 *id.* 19, 20, 21, *and cases cited;*) the capacity or state of mind of a testator at the time of making a will; the amount of injury a certain field has sustained by reason of animals trespassing on the same, and other cases of like character. Judge Selden well remarks, in delivering the opinion in the case of *De Witt* v. *Barly*, (17 *N. Y. Rep.* 340,) "The class of cases referred to is very extensive. It embraces questions of handwriting, and of the identity of persons and of things as well as of value." (3.) The next question to be considered is, did the question in this case come within the exceptions stated? In other words, could the plaintiff so describe in language the stack of straw, its appearance, the manner of threshing it, and its condition, as that persons not eye witnesses (the jury) could form as accurate a judgment in regard to the quantity of buckwheat left in the straw, by means of improperly threshing it, as the witness? The bare statement of the question, it seems to me, suggests the answer, that the jury, or any other person who had not seen the stack and buckwheat, could not. It would be beyond the reach of any person, whatever might be his powers of language or description, to describe to a jury, or any other person, all the facts and matters connected with the stack of buckwheat and the threshing of it, so they could

understand as well as the witness how much buckwheat was left unthreshed and wasted. A personal observation gives to the person ideas and impressions which are incapable of being described in language, and also facilities for the estimation of quantity, quality or injury, that no language or power which the witness might have can adequately describe to another. This is the foundation for the reason of the exceptions to the general rule. What next was necessary for the courts to do, after the necessity of the exception was established, was to make some rule or precedent whereby the province of the jury should not be invaded by allowing the opinion of a witness upon questions of fact to control their judgment. A rule was adopted immediately, which removed every obstacle which might otherwise have caused difficulty, viz: In this class of cases the witness shall first state and detail to the jury all the facts and circumstances connected with the subject that he is able, before stating his conclusions or opinions. Why? There were two good reasons for the rule: 1st. It would render the rule the same as in cases where experts are allowed to express opinions, they first being compelled to state the facts before giving their conclusions. 2d. Because, by adopting this rule, it would be impossible for the witness to invade the province of the jury; for, after detailing the facts, the jury are not bound by the opinion of the witness solely, but have all the materials necessary for the formation of an independent judgment. (*See Rochester and Syracuse R. R. Co.* v. *Budlong,* (10 *How.* 294.) The witness says: "I can't describe the appearance of the buckwheat; it did not get ripe, because it was hurt by the frost; Shoemaker threshed it; I don't think it was threshed clean; I looked at the straw; there was a good deal of buckwheat left in it; there was about 126 bushels of it in all; some looked as if it had not been threshed at all; some was threshed clean; I have owned a farm and have been a farmer seven or eight years; I am a merchant by occupation." Facts confessedly sufficient to warrant the inquiry made.

The weight of the evidence is left with the jury. The closer examination the witness gave to the subject, the more weight his conclusions would have. (*Opinion of Selden, J., Roch. and Syr. R. R. Co. v. Budlong,* 10 *How.* 294.) It does not go so much to his competency to testify in relation to the matter. It would be preposterous to say that the jury could determine, as well as the witness who had seen the whole matter, how much buckwheat was wasted. This is only applying the rule, " that the best evidence of which the case in its nature is susceptible, must always be produced." (1 *Greenl: Ev.* 7th ed. 68, § 50.) (4.) The leading cases that might seem to conflict with the positions taken, are discussed by the county judge, who has conclusively shown that none of them conflict in any view with the positions taken, except *Cook* v. *Brockway,* (21 *Barb.* 331.) The learned judge does not concur with the conclusions at which the court arrived in that case, but follows it on the ground of *stare decisis.* It is submitted that the question presented in the case of *Cook* v. *Brockway* is not precisely in point, or in conflict with the positions taken. In that case the question involved an answer that required an expression of an opinion of the witness in part founded upon the acts or opinions of the defendant in the case. From a statement of the facts in the opinion of the court this will be apparent. " A witness testified that he examined the chaff and straw and found wheat among them—some 28 or 30 kernels in a handful of chaff. He was then asked how much wheat was wasted by the defendant in threshing 648 bushels of wheat, according to the defendant's tally of the plaintiff's wheat ?" The witness was; by the form of the question, asked to state his opinion by basing the same upon the fact of the defendant's tally of the wheat, and that there was 648 bushels, as well as the examination he had given. In other words, the question would have been the same as if the defendant had been sworn, and testified he threshed 648 bushels, and then the witness had been called upon the stand, and this question put: You have

heard the defendant sworn; now, from what he testifies to as regards the number of bushels threshed, and your examination made, how much wheat was wasted? This does not come within the exceptions to the general rule. It falls within the rule laid down in *Paige* v. *Hazard*, (5 *Hill*, 603.) Experts are only allowed to state opinions upon facts sworn to by other witnesses. I am the more inclined to believe this was the understanding of the learned judge who delivered the opinion of the court in that case, from the tenor of the opinion and the cases cited therein by him. The answer to the question as regarded the quantity of wheat, involved a matter the witness confessedly knew nothing about; he only derived it from the defendant's assertion. The question presented does not come within the general rule, or any of its exceptions. Were the case in point, it cannot be binding on this court, if it is in conflict with principle and authority.

II. The justice erred in refusing to allow the plaintiff to show " that the defendant took a stack of hay belonging to the plaintiff and sold the same, and converted the money received therefor to his own use, and waive the tort, and charge for money had and received, or goods sold and delivered." It was objected to by the defendant, upon the trial, " that no such a cause of action is stated in the complaint." (1.) It is as well settled a rule as any that has ever been adjudicated, "that when property has been wrongfully taken from the owner and sold by the wrongdoer, the owner may waive the *tort* and affirm the sale, and maintain an action against the wrongdoer for the price of it, as for money had and received by him to the owner's use." (*Cowen's Tr.* 120, § 306, 4*th ed. Schroeppel* v. *Corning*, opinion of *Paige, J.*, 2 *Seld.* 112. *Putnam* v. *Wise*, 1 *Hill*, 235, 240, *note a. Berly* v. *Taylor*, 5 *id.* 577, 583, 584, *note a. Cummings* v. *Vorce*, 3 *id.* 288, *note a. Osborn, adm'x &c.* v. *Bell*, 5 *Denio*, 370. 1 *Chit. Pl.* 600, 607, *note g.*, 9*th Am. from 6th Lon. ed. Cobb* v. *Dows*, 6 *Seld*, 335 ; opinion of *Brown, J.* 341. 2 *Greenl. Ev.* 7*th ed.* §§ 117, 120. *McKnight* v. *Dun-*

*lop,* 4 *Barb.* 36. *Roth* v. *Palmer,* 27 *id.* 652. *Henry* v. *Marvin,* 3 *E. D. Smith's Rep.* 71, 75.) In *McKnight* v. *Dunlop, (supra at page* 42,) Justice Paige says : " The extent of the doctrine of waiving the tort and bringing assumpsit, where goods have been tortiously taken, seems to be confined to the case of a *sale* of the goods by the wrongdoer, when *doubtless* the owner may waive the tort and have an action *for money* had and received for the proceeds." The offer of the plaintiff was right, within the rule. It was, that the defendant took, sold and received the money. (2.) It was urged on the argument of this question in the court below, that the complaint should have stated the facts of the taking, sale and conversion of the property, and then by an allegation waived the tort, and claimed damages in assumpsit. In this reasoning I cannot concur. (*See opinion of Hogeboom, J. in Roth* v. *Palmer,* 27 *Barb.* 656, *sub.* 4.) It is a departure from established precedents in such cases. By section 142 of the code, sub. 2, " The complaint shall contain a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition." Another rule is, " That *facts,* and not the evidence upon which they are founded, must be set forth." (*Allen* v. *Patterson,* 3 *Sel.* 478, *opinion of Jewett, J. Patterson* v. *Taylor,* 8 *Barb.* 250.) Again : "Facts should be stated according to their legal effect." (*Pattison* v. *Taylor, supra, opinion of Hand, J.* 252. *Coggill* v. *Am. Ex. Bk.,* 1 *Comst.* 117, *opinion of Bronson, J. Boyce* v. *Brown,* 7 *Barb.* 85, *opinion of Hand, J. Stewart* v. *Travis,* 10 *Howard's Pr. Rep.* 153.) (3.) Apply the foregoing rules to this question. To have stated that the defendant took the stack of hay that belonged to the plaintiff, sold it to A., received so much money for it ; that the plaintiff requested of the defendant the payment of it, which the defendant refused ; that therefore the plaintiff waives the tort, and demands judgment for so much money had and received, &c., would only be detailing the *evidence* that went to form the *facts* which, pleaded according to their

legal effect, were that the defendant had received so much
money that was due and owing to the plaintiff, and a refusal
to pay it to him. (*Reasoning of Jewett, J. in Allen* v. *Pat-
terson, supra*, 478, 479. *Also opinion of Hogeboom, J. in
Roth* v. *Palmer*, 27 *Barb.* 654 *to* 657.) *How* the defend-
ant received the money was mere evidence of the fact that he
had received it. (8 *Barb.* 217.) Same principle, " When
the tort is waived, and assumpsit is brought, the receipt of
the money on the sale of the goods gives the cause of action,
and not the original tortious taking." (*Per Paige, J. in
Schroeppel* v. *Corning*, 2 *Sel.* 112, *and cases cited.*) The
offer was strictly proper. It was the evidence upon which to
found the claim, and the facts pleaded according to their
legal effect, that the defendant had received so much money
that lawfully and equitably belonged to the plaintiff. (2
*Greenl. Ev.* 107, § 117, 7*th ed.*) " It (the action for money
had and received) is a liberal action in which the plaintiff
waives all tort, trespass and damages, and only claims the
money the defendant has actually received." (*Id.*) To have
alleged the wrongful taking and conversion, and claimed judg-
ment upon contract for the money, would have been im-
proper. (*Walter* v. *Bennett*, 16 *N. Y. Rep.* 250.) (4.) The
cause of action was well set out in the complaint. (1 *Chit.
Pl.* 602, 9*th Am. ed.* *Allen* v. *Patterson*, 3 *Selden, supra.
Adams* v. *Holley, adm'x &c.*, 12 *How. Pr. R.* 326. *O'Maley*
v. *Reese*, 6 *Barb.* 658. *Book of Forms prepared pursu-
ant to resolution, by Messrs. Field, Noyes & Bradford, p.* 21,
*No.* 27, *note* 4.) (5.) By subdivision 5, section 64 of the
code, pleadings in courts of justices of the peace " are not
required to be in any particular form, but must be such as to
enable a person of common understanding to know what is
intended." Applying this liberal rule to the complaint in
this case, if any doubts could otherwise exist, they must be
removed. Any words or language however brief which showed
the defendant had moneys that belonged to the plaintiff,
would have sufficed to render it proper and competent for the

justice to admit the evidence offered in this case. The defendant cannot claim he has been surprised, after having wrongfully sold property and received the money for it, when called upon in this liberal form of action to pay it to the plaintiff. He is bound to know the law, and it does not lie in his mouth to complain that he is called upon in this form of action, instead of an action of tort, to pay. (*Benedict's Tr.* 32, 33, 4*th ed.*) The defendant was bound to demur if the complaint was not sufficiently explicit to enable him to understand it. (*Code, sub.* 5, § 64. *Hall* v. *McKechnie,* 22 *Barb.* 244.) (6.) The evidence offered would have been improperly excluded if the action had been in the supreme court; and when added to this, we have the old and well established rule that pleadings in justices' courts are treated and construed with great liberality, the question should be put at rest.

III. The justice erred in refusing to allow the plaintiff to prove that the defendant wrongfully took the plaintiff's part of the corn, and sold the same, received the money therefor, and converted the same to his own use ; stating that the proof was offered for the purpose of sustaining the allegations in the complaint, for grain sold and delivered, and money had and received, and both or either of them. (1.) This question was objected to by the defendant, by raising the same objections as to the two previous questions, and also on the ground that the plaintiff had not set out any such cause of action in his complaint. I only propose to argue two of the objections raised, viz : that the evidence is not competent; and that the plaintiff has not set out any such cause of action in his complaint. We endeavored to show, in point II, that the common counts for money had and received, and for goods sold and delivered, or either of them, were good, since the code as before, in the supreme court. In *Adams* v. *Holley, adm'x &c.* .(12 *How. Pr. R.* 326, 327, 329,) these questions were distinctly presented and passed upon by Justice WELLES. See also *Graham* v. *Camman,* (13 *id.* 360.) It being estab-

lished that the common counts are still good, in the supreme court, only two more facts are necessary to be established to clear the case from any doubts, viz : 1st. That the evidence offered was admissible under the common counts, before the code. 2d. That a pleading which is good in the supreme court is sufficient in a justice's court. As to the first proposition, see 1 *Leigh's Nisi Prius,* 4, 45 ; *O'Maley* v. *Reese,* (6 *Barb.* 658,) and cases cited in point II. The second proposition seems too clear to require an argument. If any exceptions are to be made, there would, as a matter of course, be far more liberality shown in construing pleadings in the latter courts. Again ; by adopting this rule, all the old analogies will be held good. Suitors in these courts will not be left to search out and frame new pleadings in cases where the old and well established forms amply cover the whole ground. It would be an unwise and illiberal interpretation of pleadings in the supreme court, and especially in justices' courts, to apply the strictness claimed by the respondent's counsel. (*Code,* § 64 *and subdivisions,* § 159. *Stewart* v. *Travis,* 10 *How. supra.*) (2.) An examination of the sections of the statutes relating to pleadings under the code, confirms the opinion that it was the intention of the codifiers and legislature that, at least so far as justices' courts are concerned, pleadings generally, which were good under the old forms of practice, would still remain good by the provisions of the new. By section 8 of the code of procedure, the code or act is divided into two parts. The first relates to the courts of justice and their jurisdiction. The second relates to civil actions, &c., and is distributed into fifteen titles. The first four titles relate to actions in all the courts of the state, and the others to the *certain* courts therein enumerated. By examination, it will be seen that courts of justices of the peace are not among the courts mentioned. That part of the code in relation to pleadings in the supreme court, and others mentioned by section 8, is found under title 6, part 2 ; and if by any rule of strict construction a party in the supreme court

Harpending *v.* Shoemaker.

is compelled to allege the evidence in his complaint, when he waives the tort and recovers in assumpsit, it does not apply to justices' courts, but the pleadings therein are to be governed and construed solely by the provisions of title 6 of part 1; and by these provisions, pleadings are not required to be in any *particular form*, but must be such as to enable a person of common understanding to know what is intended. "Either party may demur to a pleading of his adversary, when it is not sufficiently explicit to enable him to understand it," &c. (§ 64, *subds.* 5, 6.) To prevent any surprise, and that parties might not go to trial unprepared, another provision was made which puts it in their power to know, if they do not understand from the pleadings before, upon what *account* they are sued, or what is wished to be set up. By subdivision 14, same section, "The court may, at the joining of issue, require either party, at the request of the other, at that or some other specified time, to exhibit his account or *demand*, or state the *nature* thereof as far forth as may be in his power, and in case of default, preclude him from giving evidence of it," &c. This is a very important provision; for by subdivision 5, (*supra*,) as no *form* whatever is required in justices' courts, in pleading, almost any words or complaint will be sufficient to maintain an action upon, unless demurred to, under subdivision 6. I apprehend it would be a good complaint in a court of justices of the peace, if not demurred to, to say, "the defendant is indebted to the plaintiff in the sum of $50, which he has received, that belongs to the plaintiff." If the defendant wishes to know how he has received the money, or why he owes the plaintiff, he must make a demand pursuant to subdivision 14. If he neglects to demur or make a demand, and goes to trial, he cannot object, when legal evidence is offered to sustain the claim made, that no such a cause of action is stated. (*Op. of Strong, J. in Hall* v. *McKechnie*, 22 *Barb.* 247.) And I repeat, especially will this be so, when a good cause of action is set out in the complaint according to the forms of action heretofore estab-

Harpending *v.* Shoemaker.

lished. And it is confidently believed that this court will never establish the rule that, in justices' courts, where by express provision *no particular form* whatever is required, pleadings which were good before the code of procedure was adopted are not sufficient still. The legislature by excepting courts of justices of the peace from the operation of the statutes in relation to the supreme court, and not making any material alterations in the pleadings or practice in justices' court, virtually said that the forms of pleadings and practice which previously prevailed in these courts should still be sufficient, and remain the same as before the change, except in those cases where express provision had been made to the contrary. The court is called upon in this case to interpret and give a construction to section 64 of the code and its subdivisions, and a liberal course is to be followed in so doing. The tribunal to which it applies is one which is intended for the use of suitors, where the aid of counsel was not generally to be required, and technical refinements in pleadings not demanded; and if the section and its subdivisions, and especially subdivision 5, " that no *particular form* is required," is liberally carried out; if parties in this court conform their pleadings either to a statement of causes of action, according to established precedents, as were allowed previous to the adoption of the code, or as permitted since its adoption, substantial justice will always be in the reach of suitors, and no harm whatever can arise. The adoption of any other rule, especially the one asked by the respondent's counsel, would compel a party in a justice's court to draw his pleadings according to *some particular form,* and that *one,* too, to be arrived at by reference to some provisions of the statute in relation to pleadings and practice in the supreme court. This would in effect render subdivision 5 of the section nugatory, and ought not to be permitted.

*D. J. Sunderlin,* for the respondent. In reference to the first point made by the appellant, it is submitted, I. That

the justice was clearly right in sustaining the objection of the defendant. 1st. Because it called for the opinion of the witness. 2d. Because it did not appear that the witness was competent to give an opinion. (1.) It no longer remains an open question, but is entirely settled that the opinions of witnesses (except persons of skill, upon questions of science or trade,) cannot be received in evidence. "Witnesses must now state *facts*, not their opinions or inferences, or conclusions drawn from facts." (*Morehouse* v. *Mathews*, 2 *Comst.* 514. *De Witt* v. *Barly*, 5 *Selden*, 371. *S. C.*, 17 *N. Y. Rep.* 340. *Maynard* v. *Beardsley*, 7 *Wend.* 560. *Mayor of New York* v. *Pentz*, 24 *id.* 668. *Gibson* v. *Williams*, 4 *id.* 320. *Jefferson Ins. Co.* v. *Cotheal*, 7 *id.* 72. *Norman* v. *Wells*, 17 *id.* 136, 161. *Lincoln* v. *Saratoga and Schen. R. R. Co.*, 23 *id.* 425. *Lamoure* v. *Caryl*, 4 *Denio*, 370. *Paige* v. *Hazard*, 5 *Hill*, 603.) The opinion of a witness as to the amount of damages sustained by a party, is not admissible. (*Giles* v. *O'Toole*, 4 *Barb.* 261. *Fish* v. *Dodge*, 4 *Denio*, 311. *Dunham* v. *Simmons*, 3 *Hill*, 609. *Rochester and Syracuse R. R. Co.* v. *Budlong*, 6 *How.* 467. *Morehouse* v. *Mathews*, 2 *Comst.* 514.) The opinion of a witness as to the amount of damage sustained by a party is inadmissible, although stated in connection with the facts on which such opinion is founded. (*Cook* v. *Brockway*, 21 *Barb.* 331.) This last case is one precisely in point, and to which may be added the case of *Cook* v. *Disbrow and Booram*, decided in the 6th district at the May general term in 1860, by Justices Mason, Campbell, Balcom and Parker. That was an action to recover damages occasioned by the diversion of water; and after the witnesses had described the injury minutely, they were asked their judgment as to the amount of damage. Although the question was allowed to be put and answered, yet the court held it to be error, and reversed the judgment. The question as to how many bushels of buckwheat there are in a straw stack, does not pertain to science, trade or skill. (2.) The witness, who was the de-

fendant, did not show himself qualified to give an opinion, even if an opinion was admissible. He did not show himself to be a practical farmer, but on the contrary, he was a merchant, by occupation. It is not pretended he saw the grain threshed. It is not pretended he saw and examined the entire stack; indeed he could not examine each and every part of the straw, unless he did so before it was stacked, and that was not pretended. He does not venture to say whether there was much or little not threshed. And because he sees a few locks that are not threshed, on the outside of a large straw stack, is he to be permitted to venture an opinion as to the number of bushels left in the straw, without seeing the interior of the stack? Why not go on and describe the entire bulk of straw? He had the benefit of such description of the straw as his witnesses, Beard and Stedwell, could give, which went for the consideration of the jury. The learned county judge endeavored, in his opinion, to make this case come within one class of exceptions to the general rule, viz: "That opinions are to be received, when in the nature of things it is impossible to describe in language an absent scene or object, so as to enable the hearer to form the same clear conception and judgment in regard to it as if it were present to his senses." But in this he entirely failed. Assuming this to be the rule, this case does not fall within the exception. Suppose that the witness had stated that he had examined the entire bulk of straw, with a view of ascertaining the proportions of threshed and unthreshed, and testified truthfully that this stack had yielded 126 bushels of buckwheat; that nine-tenths of the stack was threshed clean, and one-tenth was not threshed at all; would not the jury then be able to form the same clear conception and judgment in regard to it as the witness himself would? Could not the jury tell how many bushels were left in the stack, as well as the witness could? And if so, even under this exception, his opinion was not admissible. Indeed, so far as he went, there was no basis whatever for an estimate or opinion.

Harpending *v.* Shoemaker.

II. The justice ruled correctly in rejecting the offer of the plaintiff in reference to the wrongful taking and conversion of the stack of hay. (*Cushingham* v. *Phillips*, 1 *E. D. Smith's Rep.* 418. *Note c, Code,* 52.) By sec. 64, sub. 3, of the code, it is declared, the complaint shall state in a plain and direct manner the facts constituting the cause of action. The complaint charged the sale and delivery of hay, but did not charge a wrongful taking and conversion. The objection, therefore, was well taken, and properly sustained. The plaintiff could not have declared in this same complaint for the wrongful taking and conversion of the stack of hay. That would have constituted a misjoinder. (*Willard* v. *Bridge*, 4 *Barb.* 361. *Burdick* v. *McAmbly*, 9 *How.* 117.) If he had so stated in his complaint, and alleged that he waived the tort, and sought only to recover in assumpsit, it is possible that his complaint would have been sufficient. But the facts constituting this cause of action are the wrongful taking and conversion of the plaintiff's stack of hay. The cause of action exists, independent of what he is willing to waive. His waiver does not create the cause of action; it only changes the remedy. Again; this is a distinct and separate cause of action, not at all barred by this recovery; one against which no counter-claim can be set up, and in which the plaintiff, if successful, can have execution against the person of the defendant; his remedy is perfect, and is not in the least prejudiced. Even if he had been permitted to prove to the extent of his offer, the defendant would still have been entitled to judgment. Again; the plaintiff might have amended upon the trial. This he should have done. The justice possessed the power and discretion, but the plaintiff did not ask for its exercise. If the rule contended for here is to prevail, then the practice in these primary courts is open to the grossest frauds. A party may declare for goods sold and delivered, or money had and received; the defendant may well know that no such indebtedness exists, and he goes to trial. The plaintiff makes a feint, but fails to prove it; changes his

ground and cause of action, and proves a conversion of prop-
erty. The defendant is unprepared to meet the new issue,
and is consequently beaten. This would be the practical
result of such a rule. .

III. The foregoing reasoning is equally applicable to the
offer of the plaintiff to prove the conversion of his share of
the corn, and the ruling of the court thereon. Besides, it is
very manifest that this offer was made in bad faith, for the
plaintiff swears that some of the corn was destroyed by fowls.
And that the defendant fed some of his (the plaintiff's) part
of the corn to the plaintiff's cow; and· the plaintiff's. wit-
ness, Beard, swears he measured the corn for the plaintiff in
the barn, after the defendant left it; and the plaintiff
swears he directed Beard to measure the corn; and Shoe-
maker and Havens swear to the division of the corn, and the
leaving of the plaintiff's half in the barn where Beard meas-
ured it for the plaintiff. This offer therefore was in bad
faith, and strongly characterize the offer to prove the conver-
sion of the hay, which doubtless was equally without merit.

*By the Court,* JOHNSON, J.   On the trial before the jus-
tice, this question was put to the witness :   " How much less
buckwheat was there, than there would have been if the
same had been properly threshed ?"   The witness had already
stated that there was 126 bushels after it was threshed, and
that he had examined the straw ; that he thought it was not
threshed clean; that there was a good deal of buckwheat
left in it; that some of it looked as though it had not been
threshed at all, and that some of it was threshed clean.   He
had also stated that he had owned a farm and had been a
farmer, but was then a merchant.   The question was objected
to upon two grounds:   1. That it calls for the opinion of the
witness.   2. That it does not appear that the witness is com-
petent to give an opinion.   The objection was sustained by
the justice, and the evidence excluded, but upon which
ground does not appear.   The county court sustained the

ruling of the justice, and the question is presented to us for review, upon appeal.

In order to examine the question presented, intelligently, it is necessary, in the first place, to see what was the issue between the parties, to which the evidence proposed was addressed, and what it was that the plaintiff was seeking to establish, by the answer to the question propounded.

The issue on this branch of the case was, whether the defendant, who was a tenant of the plaintiff, in securing and threshing the crops, had performed the labor in such a negligent, unskillful and unworkmanlike manner that such crops, or a considerable portion thereof, had been thereby lost to the plaintiff. The precise object of the inquiry was to ascertain how much, or what proportion, of the grain was left upon the straw after the threshing; and the first question presented is, whether the opinions of witnesses, properly qualified to speak upon the subject, are competent evidence to aid in establishing such a fact.

The standard works upon the law of evidence do not furnish us any light upon this question, and the reported cases do not seem to have established any clear and well defined rule upon the subject of the admissibility of evidence resting in the judgment or opinion of an informed and competent witness, in matters of common experience and observation, having little, if any, relation to questions of science and skilled experts. Indeed the cases appear to have created confusion and uncertainty, instead of establishing order and certainty, upon this subject. I shall cite only a few of them. (*De Witt* v. *Barly and Schoonmaker*, 17 *N. Y. Rep.* 340. *S. C.*, 5 *Seld.* 371. *Clark* v. *Baird, Id.* 183. *Morehouse* v. *Mathews*, 2 *Comst.* 514. *People* v. *Eastwood*, 14 *N. Y. Rep.* 562. *Roch. and Syr. R. R. Co.* v. *Budlong*, 6 *How. Pr. R.* 467. *S. C.*, 10 *id.* 289. *Cook* v. *Brockway*, 21 *Barb.* 331. *Nellis* v. *McCarn*, 35 *id.* 115.) The books are full of cases upon this subject; but enough have been cited to show that the rule is not yet fixed upon any well defined principle. In

some of the cases it is said that opinions are not competent in any case, except in those cases where experts are permitted to state opinions. This was said in *Cook* v. *Brockway,* (*supra,*) which the county court held to be decisive of the question here. On the other hand it is said, in *Nellis* v. *McCarn,* (*supra,*) that witnesses may give their opinions upon questions of value, and as to the amount of damages a party has sustained, where the damage consists in an injury to, or destruction of, property. It is well settled that witnesses who have sufficient knowledge upon the subject, derived from their own experience and observation, may give their opinions in evidence, upon questions of the value of property, whenever such a question is in issue, and proof is necessary on the subject. This has long been established. It is also now settled by our court of last resort, that an unprofessional witness may give an opinion in evidence as to the mental capacity of a person, founded upon personal observation of his appearance and conduct. (*De Witt* v. *Barly and Schoonmaker,* (*supra.*) Also, as to whether a person is intoxicated, or sober. (*People* v. *Eastwood, supra.*) Much of the difficulty, I think, upon many of these questions, has arisen from not discriminating between mere opinion, founded and expressed upon some hypothesis stated, or statement of facts related by another, and knowledge of a witness, which is in part opinion or judgment, and in part observation and experience, in regard to the very matter upon which he is called to testify. It is every day's evidence in the trial of causes at the circuit, that witnesses are called upon to state their judgment, or opinion, upon questions of value, of quantity, of size, of distance, of time, and the like, where there has been no test applied by measurement or otherwise. And this species of evidence has been found absolutely necessary to even a tolerable administration of justice. Indeed to refuse it would in very many cases operate as a complete denial of justice.

A brief reference to a very few of the most common cases

will not be inappropriate in the discussion of this question. In actions of trespass, to recover for the destruction of crops, partial or total, by animals or otherwise, witnesses acquainted with the crop, and the average yield of such crops, after seeing the extent of the destruction, are allowed to state their judgment, or opinion, as to the quantity of grain destroyed. In actions of tort for taking an unmeasured quantity of grain, or an unmeasured portion, from a quantity measured, witnesses who had seen the grain before, and the portion, if any, left afterwards, are allowed to give their opinion or judgment as to the quantity taken. In actions of assault and battery, where the instrument used is not produced, witnesses who saw it are uniformly allowed to state their judgment, or opinion, as to the length and size of it, and the distance they were, at the time of the affray, from the spot where it took place, the time when, &c. Many more instances might be mentioned, equally in point, in which the rule would scarcely be diputed by any one; where it is perfectly obvious that the knowledge in great part rests in the judgment or opinion of the witness, founded upon his observation. It is his conclusion of fact, from what he saw or experienced. That this is the *common law of evidence* upon trials, and must have been always, will, I am confident, be confirmed by the assent of all judges and lawyers of much experience in trials at *nisi prius*. A question of this character, precisely, was put to the same witness upon the trial in this case. The crop, it seems, had been injured by the frost, and the witness was asked what proportion of the crop had been destroyed by the frost. He answered that, in his judgment, one half had been thus destroyed. The question was objected to, but the answer was allowed. That it was properly allowed, can, I think, admit of no doubt. The fact could scarcely be proved to the apprehension of a jury in any other way. No description in language could have brought the facts before their minds in such a manner as would enable them to form any intelligent judgment upon it. But the question rejected was pre-

cisely of the same character. It sought to ascertain the proportion or quantity of the grain left upon the straw, after threshing. How could this be described to a jury, so as to enable them to decide, without the conclusion of fact of the witness, founded upon his examination. The question was not framed with much 'skill, but the object of it is entirely apparent. It did not call for a mere opinion, but for the knowledge of the witness, of an existing fact; knowledge inferior in degree, however, to that which is absolute and certain. But it was his knowledge, nevertheless, derived partly from observation and partly from opinion or judgment. And this knowledge must of necessity have existed in the mind of the witness, with far greater clearness and certainty, than it could have been communicated to the minds of the jury by any statement he might have made of what he saw merely, however clear and lucid such statement might have been. If witnesses were to be permitted to state to a jury those facts only, of which they have absolute and certain knowledge, not only the range of inquiry, but the province of remedial justice, would be very materially contracted.

It is quite obvious that the decision in *Nellis* v. *McCarn*, and that in *Cook* v. *Brockway*, cannot both stand as law, as they are directly opposed to each other, in principle. In each case the action was to recover for the loss or destruction of property, and in one, the opinion of the witness making the examination, as to the quantity lost, or destroyed, was allowed, and in the other held inadmissible. Suppose in *Cook* v. *Brockway* the action had been in the nature of trover, for the conversion of the chaff after the threshing and cleaning, or for the conversion of the wheat and chaff together, after the threshing and before cleaning, when no measurement had been, or could well have been, made. Is it possible in such a case, that a witness who had made a proper examination, and was competent to form an intelligent judgment, would not be allowed to give such judgment or opinion as to the quantity of wheat converted? I think not. And yet

the opinion of the court in that case seems to hold that it should be excluded. The evidence was not held to have been improperly received on the ground that the witness had not examined sufficiently, or was not qualified to form a correct opinion.

In this case, it cannot be pretended that the witness was not qualified, by experience and examination, to form a reasonably correct judgment. I am clearly of the opinion, therefore, that the answer to the question was improperly excluded.

The plaintiff should also have been allowed to prove the conversion of his hay and corn by the defendant, and the receipt of the money therefor. The objection was that no such cause of action was stated in the complaint; and upon this objection the evidence was excluded. The complaint contained a count for indebtedness from the defendant to the plaintiff, for hay, corn and other property sold and delivered by the plaintiff to the defendant at his request. Also on account of money had and received by the defendant to the plaintiff's use. The plaintiff offered to prove the tortious taking, and the sale of the property, and the receipt of the money, and to waive the tort, and go for the money had and received, or for the value of the hay and the corn, as for goods sold and delivered. Whether the owner, whose property has been tortiously taken, can waive the tort, and bring his action as for property sold and delivered, while the wrongdoer still keeps the property in his possession, the cases do not agree. But they all agree that if the wrongdoer sell the property, and receive the money therefor, an action lies at the suit of the owner, for money had and received, and that such an action is a waiver of the tort. (*Putnam* v. *Wise*, 1 *Hill*, 234, 240, *note a. Schroeppel* v. *Corning*, 2 *Seld.* 112. *Roth* v. *Palmer*, 27 *Barb.* 652.) In such an action it was never necessary to state in the complaint how, or under what circumstances, the money came to the defendant's hands. That is mere matter of evidence. The receipt of the money to the plaintiff's use is the fact which constitutes the cause

of action: (*O'Maley* v. *Reese*, 6 *Barb.* 458.   *Adams* v. *Holley*, 12 *How. Pr. R.* 326.   *Allen* v. *Patterson*, 3 *Seld.* 476.)

The objection to the question whether the witness held the grain as his own, or as a pledge, was properly overruled. Whether he held it under one claim or the other, was a fact which he might testify to directly.

I think the objection to the question as to how much corn there would have been if it had been well taken care of, was properly sustained. The question related to the want of care in the cultivation of the crop. The answer could have been, at best, but mere speculation. If the witness had expressed his opinion on the subject, it would have been a speculative opinion merely, based upon no knowledge whatever, of any existing fact. Mere speculative opinions are not competent evidence, unless indeed in the case of experts. In respect to unprofessional persons, opinions, to be competent evidence, must be such as to constitute, in some degree, knowledge of existing facts.

The judgment of the county court and that of the justice must be reversed.

[MONROE GENERAL TERM, September 1, 1862.   *Johnson, Welles* and *J. C. Smith,* Justices.]