DAVID TRYON, Respondent, *v.* JEREMIAH F. BAKER, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY, 1873.)

Where a wrong-doer sells property illegally taken, the owner may waive the tort and sue for money had and received; and where the property taken is money, it may be recovered in such an action without waiting for the formality of a sale.

It may be assumed, in order to sustain a judgment rendered upon the report of a referee, that a finding of fact was sustained by evidence given upon the trial, although such evidence does not appear in the case on appeal.

THIS was an appeal from a judgment entered on the report of referees. The facts are stated in the opinion.

*H. A. Maynard,* for the respondent.

*Rollin Tracy,* for the appellant.

Present—MULLIN, P. J., TALCOTT and E. D. SMITH, JJ.

MULLIN, P. J. This action is brought to recover sixty-five dollars, money deposited with defendant by plaintiff, to be returned when called for, and also to recover eighty-five dollars for the work, labor and services done and rendered by the plaintiff for the defendant. The defence is,

1st. A general denial.

2d. That the money was paid to and the work done for the defendant under a special agreement between the parties that plaintiff should deliver to defendant $1,000 in money, and render services to and for defendant during the residue of his, plaintiff's, natural life, and in consideration thereof defendant would support him (the plaintiff) during the rest of his life; that defendant had kept and performed his part of the agreement, but that plaintiff had failed to perform it on his part, and that by reason thereof defendant had sustained

damages which he insisted upon by way of recoupment or counter-claim.

The defendant alleged that he had paid plaintiff twenty dollars. On the trial, before three referees appointed by the court, the plaintiff was examined as a witness in his own behalf, and testified that he lived with defendant, the last time in the spring of 1867; they wanted him to live with them as long as he lived. Mrs. Baker told him defendant would give him a life lease; he told them he would go down to Schoharie and bring up his things, and he did. He brought sixty-five dollars in money and some notes and gave them to Mrs. B. to take care of for him. She afterward told him defendant had used the money. He worked there through that summer and until spring of the following year, and left in March, 1868. Mrs. B. said he must try and get another home. Baker did not seem to want to keep him. Defendant said he could not stay any longer. One of the notes he gave Mrs. B. was for $600 or $700, another for twenty dollars, and another for fourteen dollars; the notes were good.

The plaintiff gave evidence tending to prove his services worth, besides his board, eight dollars per month.

One Conklin testified that defendant told him plaintiff had been living with him, but he had come to the conclusion he would not have him any longer.

The defendant was examined in his own behalf, and testified that it was agreed that in consideration that defendant would support plaintiff during the rest of his life he would pay him $1,000, and perform such labor as he was able. That the sixty-five dollars was delivered to defendant's wife, and the labor plaintiff performed was performed under that agreement. Plaintiff never paid the $1,000, and left without performing his part of the agreement. The defendant performed his part of it. The plaintiff's services were not worth his board. His board was worth four dollars per week a part of the time he lived at defendants, and three dollars per week for another part.

Plaintiff was a man sixty years of age, lame and unable to

do much work; defendant paid him twenty dollars. Other evidence was given tending to prove plaintiff's services were not worth his board.

The referees find that previous to 16th April, 1867, the plaintiff and defendant negotiated for an agreement by which defendant was to give plaintiff a written contract to support plaintiff during his natural life, and plaintiff in consideration therefor was to labor for defendant as much as he was able, and also give him what property he had, amounting to nearly $1,000.

That plaintiff handed to the wife sixty-five dollars in currency, and promissory notes to between $600 or $700, for safe keeping till the above contract should be executed.

The defendant appropriated the sixty-five dollars to his own use. The agreement in writing was never executed by defendant, and the proposed contract was never consummated. That plaintiff worked for defendant till he was expelled by defendant from his premises, whereupon plaintiff demanded his money and pay for his work.

They also found that defendant was not liable to plaintiff in any amount for work and labor. That plaintiff was not liable to defendant for board, &c., in any sum. That defendant was liable for sixty-five dollars, less twenty dollars paid, leaving due forty-five dollars, which with interest to date of report amounted to fifty-three dollars and forty-five cents.

For this amount judgment was entered, and from that judgment the defendant appeals.

The referees find that a verbal agreement was made, by which plaintiff was to pay to defendant $1,000, and do such work as he was able for defendant during his life, and the defendant in consideration thereof agreed to support him. Such agreement not to become obligatory until reduced to writing and executed by defendant.

No such agreement is proved by the evidence contained in the case. We must, therefore, assume in support of the judgment that there was evidence given before the referees not contained in the case.

The defendant did not prove the contract to be reduced to writing, and hence no agreement was ever concluded by which the parties were bound.

Had the plaintiff paid money or rendered services in anticipation of the contract being made so as to bind the parties, he would have been entitled to recover back the money and to recover for his services when the defendant failed to procure it to be reduced to writing.

If the contract had been concluded, the defendant violated it by turning the plaintiff away from his house.

It is not necessary to inquire whether the defendant would be liable for the sixty-five dollars left with Mrs. Baker for safe keeping. The defendant appropriated it to his own use and was liable to the plaintiff in trover for it.

The plaintiff was not bound to sue in trover; he could waive the tort and recover on the agreement implied by law to repay the money. It cannot be said to be settled by adjudication, that the owner of property wrongfully appropriated can waive the tort and recover on an implied contract of sale. When, however, the wrong-doer sells property illegally taken, the owner may waive the tort and sue for money had and received. (*Harpending* v. *Shoemaker*, 37 Barb., 270–291, and cases cited.)

It would seem to follow that where the property taken is money, it might be recovered in an action for money had and received, without waiting for the formality of a sale of it, an event which would not be likely to occur.

The property taken in this case was money, and the right of recovery would seem to be perfect. The judgment is right as to the money.

The referees find that plaintiff's services were worth no more than his board while he lived with defendant, and therefore they refused to allow him anything for such services.

The finding that no agreement was concluded between the parties disposes of any claim on the part of the defendant for damages for breach of the contract. He was allowed for the money paid to the plaintiff in reduction of the money

Tryon *v.* Baker.

taken by him, and thus the rights of the parties seem to have been properly adjusted.

There are a multitude of requests that the referees find certain facts, some of which it is possible they might and perhaps ought to have found. But the findings made are supported by the evidence, and findings on collateral points could not change the result.

The judgment should be affirmed.