### STARR CASH CAR CO. *v.* REINHARDT *et al.*

*(Common Pleas of New York City and County, General Term.* December 5, 1892.)

1. COUNTERCLAIM—WHEN ALLOWED—CONVERSION—WAIVER OF TORT.
  Under Code Civil Proc. § 501, subd. 2, providing that in an action on a contract any other cause of action on contract may be interposed as a counterclaim, defendants, in an action for the price of goods sold, may counterclaim for other goods taken without their consent by plaintiff, and applied by plaintiff to his own use, since defendants may waive the tort, and rely on plaintiff's implied contract to pay for the goods.

2. SAME—CLAIMS ARISING FROM SAME TRANSACTION.
  Where plaintiff sued for the price of cash cars put up in defendants' store, and defendants, by way of set-off, claimed that, in putting up said cars, plaintiff removed and appropriated defendants' old cash service, the cause of action set up in the counterclaim is not within Code Civil Proc. § 501, subd. 1, providing that a cause of action arising out of the transaction, or connected with the subject of the action, set forth in the complaint, may be interposed as a counterclaim.

Appeal from city court, general term.

Action by the Starr Cash Car Company against Aaron Reinhardt and Henry Reinhardt. Judgment for plaintiff. Defendants appeal. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Joseph C. Rosenbaum,* for appellants. *Janeway, Thacher & Richards,* (*Eugene L. Richards,* of counsel,) for respondent.

PRYOR, J. The action is for the purchase price of 15 cash carriers, sold and delivered by the plaintiff to the defendants. The answer, by not denying, admits the price and the sale and delivery of the cash carriers, and then proceeds to plead a counterclaim, as follows: That there was on the premises of the defendants a certain car system; that when the plaintiff placed its service in the store of the defendants it took to itself the old service of the defendants, and applied the same to its own use and benefit, without the knowledge

of the defendants; that the reasonable value of the said old service was $150; that the defendants have demanded from the plaintiff a deduction to that amount from its bill, and have tendered to the plaintiff the sum of $150, and hereby offer to allow judgment to be taken against them for the sum of $150, with interest and costs. At the trial plaintiff moved for judgment upon the pleadings, "on the ground that the answer did not deny any of the allegations of the complaint, and did not set up a counterclaim which could properly be interposed in this action." The motion was granted, and judgment directed for plaintiff for the full price of the cash carriers, to which order and direction defendants duly excepted. The sole question for decision is whether the facts alleged constitute a valid counterclaim.

Defendants insist that the cause of action which they retort upon plaintiff arises out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or, in any event, that it is "connected with the subject of the action." Code Civil Proc. subd. 1, § 501. The contention is obviously untenable. The transaction set forth as the foundation of plaintiff's claim is the sale of 15 cash carriers. The cause of action alleged in the answer is the conversion of the old car system. The sale of one commodity to the defendants, and the conversion of another commodity by the plaintiff, are two totally different and independent transactions. Neither is the cause of action in the answer connected with the subject of the action in the complaint. The subject of action in the complaint is the sale of the 15 new cash carriers; the cause of action in the answer is the conversion of the old car system,—between which subsists no legal connection whatsoever. It is not apparent, therefore, on the face of the answer, that the cause of action it advances sustains to the claim in the complaint that common origin or relation which the Code exacts as the indispensable condition of a valid counterclaim. *Edgerton* v. *Page*, 20 N. Y. 281, 285; *Boreel* v. *Lawton*, 90 N. Y. 293, 297; *Thorpe* v. *Philbin*, (Com. Pl. N. Y.) 3 N. Y. Supp. 939. But, in an action on contract, any other cause of action on contract may be interposed as a counterclaim. Code, subd. 2, § 501. It is to be ascertained, therefore, whether the cause of action exhibited in the answer be a cause of action on contract.

Undoubtedly the facts stated in the answer constitute a cause of action for conversion. But "if, upon the facts alleged, a cause of action in tort, as well as one on contract, may be spelled out," the pleader may elect to stand either upon tort or contract. *People* v. *Wood*, 121 N. Y. 522, 24 N. E. Rep. 952. Do the defendants in their answer rely upon tort or contract? Manifestly upon contract. Their claim is not damages for the conversion, but the specific value of the goods applied by the plaintiff to its use and benefit; and that value they plead as a counterclaim, which would be inadmissible were the claim of damages for a tort. Beyond all controversy, the defendants elect to treat their cause of action as a claim upon contract.

But it does not appear that the plaintiff has sold the thing taken,—the contrary, rather; and the question remains whether the owner of a chattel converted, but not parted with, for money or its equivalent, may waive the tort, and sue the wrongdoer in *assumpsit* as upon an implied contract of sale. It is conceded that in England, and in many states of the Union, the query must be answered in the negative. See cases collected by Mr. Freeman in his note to *Webster* v. *Drinkwater*, 17 Amer. Dec. 242. Nay, more, in this state the law was that trover could not be turned into *assumpsit*, for money had and received, until the thing converted was exchanged by the wrongdoer for money or money's worth. *McKnight* v. *Dunlop*, 4 Barb. 36, 42; *Harpending* v. *Shoemaker*, 37 Barb. 270, 291; *Osborn* v. *Bell*, 5 Denio, 370; *Tryon* v. *Baker*, 7 Lans. 511, 514; *McGoldrick* v. *Willits*, 52 N. Y. 614, 620. "When the tort is waived, and *assumpsit* is brought, the receipt of the money on the sale of the goods gives the cause of action." *Schroeppel* v. *Corning*, 6 N. Y. 107,

112. Meanwhile, however, the current doctrine was subjected to destructive criticism as well by courts as by commentators. Notes of Nicholas Hill to *Putnam* v. *Wise*, 1 Hill, 234, and *Berly* v. *Taylor*, 5 Hill, 584; 2 Greenl. Ev. § 108, note 5; Cooley, Torts, 95; Hil. Torts, 42. "A more liberal, and, we think, a more sensible, rule, is laid down by the later text writers, and sustained by many courts, to the effect that the tort may be waived, and *assumpsit* maintained, when the property taken has been converted either into money or into any other beneficial use by the wrongdoer." *Evans* v. *Miller*, 58 Miss. 120. "We see no reason why the right to waive the tort and maintain *assumpsit* should not be as well applicable to the case where the defendant has actually appropriated to his own benefit and used up the plaintiff's goods himself as where he has sold them to another and received the money, though in the former case the action must be for goods sold and delivered, and not for money had and received." TALCOTT, J., in *Abbott* v. *Blossom*, 66 Barb. 353, 356. "If the defendant had taken the wheat tortiously, the plaintiff, according to the well-known right of election, might have brought *assumpsit* for goods sold and delivered." COWEN, J., in *Putnam* v. *Wise*, 1 Hill, 234, 240. "Butts has therefore an election against Collins. He can maintain trover or *assumpsit*, and in the latter action recover the value of the flannels under the common counts for money had and received, or for goods sold." MAISON, Senator, in *Butts* v. *Collins*, 13 Wend. 139, 154. At last, in *Hawk* v. *Thorn*, 54 Barb. 164, it was expressly ruled that, "where one has unlawfully taken possession of another's property, the tort may be waived, and an action brought for its value." And in *Terry* v. *Munger*, 121 N. Y. 161, 24 N. E. Rep. 272, the court of appeals, per PECKHAM, J., said: "The owner of personal property which has been wrongfully converted by another man, although the property is retained by the wrongdoer, may waive the tort, and sue for and recover its value, upon an implied contract of sale." The rule as thus held finds support in the adjudications of other states. *Hill* v. *Davies*, 3 N. H. 384; *Stockett* v. *Watkins*, 2 Gill & J. 326, 342, 343; *Halleck* v. *Mixer*, 16 Cal. 574; *Fratt* v. *Clark*, 12 Cal. 89; *Barker* v. *Cory*, 15 Ohio, 9. It is commended, moreover, to acceptance by the analogies of the law and the interests of justice. A consent induced by fraud is no consent; and yet the vendor in a fraudulent sale may waive the tort, and sue for goods sold. It is conceded that upon a conversion, if the goods be parted with by the wrongdoer, he may be held as for money had and received; his promise to pay being arbitrarily forced upon him by implication of law. So, if he retain the goods, the owner should be allowed to treat the transaction as a sale, and the law should imply a promise to pay their value. In such case the tort feasor will not be allowed to set up his own wrongful intent, in disavowal of the implied promise which the law would otherwise raise against him. *Hill* v. *Perrott*, 3 Taunt. 274, 275; *Lightly* v. *Clauston*, 1 Taunt. 112, 114, per MANSFIELD, C. J. The rule is advantageous to a defendant, since, being sued on contract instead of in tort, he is exempt from arrest, and may plead an offset. "No party is bound to sue in tort when, by converting the action into an action on contract, he does not prejudice the defendant; and, generally speaking, it is more favorable to the defendant that he should be sued in contract, because the form of action lets in a set-off, and enables him to pay money into court." TINDAL, C. J., in *Young* v. *Marshall*, 8 Bing. 43. Finally, by converting the tort into a contract, and so opening the case to a counterclaim, all the controversies between the parties may be adjusted in a single litigation. The conclusion is that the defendants had an option to waive the conversion, and to claim as for goods sold and delivered, and that, by their answer, they elected to proceed upon contract. The result is that the counterclaim is valid, and the judgment overruling it erroneous. Judgment reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.